Motion denied November 19, 1958, argued April 6, affirmed
April 20, petition for rehearing denied May 17, 1960

# STATE OF OREGON *v.* DELANEY

332 P. 2d 71
351 P. 2d 85

ROSSMAN, J.

Following his conviction in the Circuit Court for Clackamas County of the crime of assault with intent to commit rape, the defendant gave notice of appeal and filed with this court (1) an affidavit in which he described himself as an indigent, and (2) a motion which sought orders (a) for the appointment of counsel to represent him upon appeal and (b) directing the Circuit Court for Clackamas County to deliver to him,

at county expense, a transcript of the proceedings in that court. We shall assume that defendant's affidavit, which describes him as indigent, is truthful. The motion states that it "is made pursuant to the decision of the Supreme Court of the United States in the case of *Griffin vs. State of Illinois*" (351 US 12, 76 SCt 585, 100 L Ed 891, 55 ALR2d 1055). The only information concerning the appellant's case which we have is given by (a) the following part of the affidavit: "I have meritorious grounds for appeal in my opinion," and (b) the name of the crime with which he is charged (ORS 163.270). The penalty for the guilty is not to exceed 20 years' imprisonment. ORS 163.210. The nature of the "meritorious grounds" has not been disclosed. We have no information concerning the defendant, such as his age, education and experience. If the defendant was represented by counsel in the circuit court there is no statement by that attorney as to whether, in his opinion, the defendant has a basis for an appeal. Thus, the defendant asks us to appoint counsel for him and to require the county to supply him with a transcript merely because he states, "I have meritorious grounds for appeal in my opinion."

. ORS 21.470 authorizes the trial judge to supply an indigent appellant, at county expense, a transcript of the proceedings. The trial judge, in the case at bar, has ordered that the transcript be delivered to the defendant, and, accordingly, that phase of the motion requires no further attention.

We are not, in this case, faced with the question of appointment of an attorney for the purpose of perfecting the defendant's appeal. Few laymen, no doubt, would be able to comply with the procedural requirements in that regard without the aid of counsel. It should, therefore, be understood that what is here said

relates only to the question of whether an attorney should be appointed to present the case for the defendant by brief and oral argument.

The defendant's motion states that it "is made pursuant to * * * *Griffin vs. State of Illinois*." Griffin in that case, together with his co-indictee, had been convicted in the Illinois state courts of armed robbery. Preparatory to appeal to the Illinois appellate court, the two defendants moved in the trial court for delivery to them, at public expense, of a transcript of the trial proceedings. An affidavit described the defendants as indigents. The Illinois courts denied the motion. The United States Supreme Court held that denial of the motion impinged upon rights which the Federal Constitution granted to the defendants.

We recognize, as pointed out by Justice Schaefer of the Illinois Supreme Court in "Federalism and State Criminal Procedure," 70 Harv L Rev 1, that *Griffin v. Illinois* does not stand alone like an island in a sea, but that its holding is a further development of the rights possessed by an accused ever since it was perceived that the due process and equal protection clauses are applicable to those who are tried for crimes in state courts.

Although Illinois gives to all convicted of crime review by writ of error, the only manner in which a complete review can be had is through a bill of exceptions, and a transcript of the record is essential to such a bill. Without a transcript, an appellant is unable to challenge rulings which were made during the reception of evidence and in the instruction of the jury. After the trial judge in the Griffin case had denied the defendants' motion, the petitioners exhausted their other state remedies but still lacked the indispensable transcript. Five members of the United

States Supreme Court deemed that the denial of the transcript was a matter of federal concern. Whether all five believed that the denial of the transcript was an infringement upon the due process and equal protection clauses cannot be definitely determined from the decision. The latter recognized that a state is not required to provide those convicted of crime with appellate review, but held that if review of that nature is allowed to those who can pay the expenses thereof, it must be granted to like extent to those who cannot. The equal protection clause so demands, according to the holding, which stated:

"Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

The majority held that unreasonable discrimination in the administration of criminal justice, whether during the trial or upon appellate review, constitutes arbitrary denial of fundamental fairness which the due process clause does not countenance. Poverty is an irrelevant element and cannot withhold from the penniless appellate review available to those in adequate financial condition. Without the sought-for transcript, the two would-be appellants would have been unable to secure appellate review to the same extent as those who could purchase transcripts. The Griffin decision was followed in *Eskridge v. Schneckloth,* 355 US 947, 2 L Ed2d 526. *Barber v. Gladden,* 210 Or 46, 298 P2d 986, 309 P2d 192, yielded effect to the Griffin holding by ruling that, since the indigent petitioner for a writ of habeas corpus in that case could not pay for an undertaking on appeal and, therefore, unlike those who could pay, would be denied appellate review, the statutory requirement for filing the undertaking would be deemed waived.

Had the need for a transcript in the Griffin case and for an undertaking in the Barber case not been met, those would-be appellants would have been barred from the complete appellate review which was at the avail of those in favorable financial circumstances. But, in the case at bar, whether the defendant has or has not an attorney, his case will receive consideration from this court. The notice of appeal has brought the case to this court. ORS 19.030(3). It must, and will, receive our attention.

Although only a transcript was sought by the would-be appellants in the Griffin case, the court's concern was with something broader than that document. Its concern was with the principles of constitutional law that have become termed "equal protection" and "due process" whether in a given case those principles pertain to a transcript of record or to some other need which, if not met, will deny to a would-be appellant equal protection or due process.

The Sixth Amendment to the United States Constitution says:

"In all criminal prosecutions, the accused shall * * * have the assistance of counsel for his defense."

Rule 44 of the Federal Rules of Criminal Procedure follows:

"If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."

Article I, § 11, Constitution of Oregon, provides:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel; * * *."

ORS 135.310 says:

"If the defendant appears for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned and shall be asked if he desires the aid of counsel."

ORS 135.320 follows:

"Whenever it appears upon arraignment of a person accused in the circuit court of a crime * * * that he is without funds and unable to retain his own counsel, the court * * * shall, upon request of the accused, appoint suitable counsel, not exceeding two, to represent him."

ORS 133.610, which applies to magistrates, contains provisions substantially the same as ORS 135.310.

ORS 138.820 empowers this court to appoint counsel to represent the defendant upon appeal "if he is not already represented by counsel" in cases governed by ORS 138.810, which automatically appeals death judgments.

■ ORS 135.330 provides for compensation for counsel appointed pursuant to ORS 135.320. Payment is made by the county in which the proceeding is had. If the plea is guilty to a charge of a misdemeanor, the remuneration is $5, but upon a charge of felony it is $15. If the plea is not guilty, a fee of $10 per day for not more than two days upon a charge of a misdemeanor becomes payable, and $15 per day if the accused is charged with a felony, except in homicide cases. In cases of the latter kind "a sum not exceeding $150" may be paid to the court-appointed counsel. Counsel fees in appeals for which ORS 138.810 makes provision are fixed by this court in a reasonable amount and are paid by the county in which the judgment of death was entered. ORS 138.840(3): It seems

clear that the statutory provisions above cited, with the exception of ORS 138.840(3), have no application to services rendered upon appeal, and that they do not authorize this court to appoint counsel. But see ORS 21.720.

*Johnson v. Zerbst,* 304 US 458, 58 SCt 1019, 82 L Ed 1461, decided in 1938, represents the first pronouncement by the United States Supreme Court that the Sixth Amendment guarantees the assistance of counsel to all defendants in federal criminal trials. It held that compliance with the Sixth Amendment "is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty." Waiver of the right was held permissible if "competently and intelligently" made. The crime in that case was non-capital.

Provision for the assistance of counsel in state courts under the Fourteenth Amendment has not been as broad as in the federal courts under the Sixth Amendment. *Powell v. Alabama,* 287 US 45, 53 SCt 55, 77 L Ed 158, 84 ALR 527, indicated that the assistance of counsel in the state courts is essential to due process in at least capital cases. However, *Betts v. Brady,* 316 US 455, 62 SCt 1252, 86 L Ed 1595, referring to the Powell case, said:

"* * * The court stated further that 'under the circumstances * * * the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process', but added: 'whether this would be so in other criminal prosecutions, or under other circumstances, we need not determine. All that is necessary now to decide, as we do decide, is that, in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own de-

fense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; * * *'*; ''

After *Betts v. Brady,* supra, it became clear that due process under the Fourteenth Amendment does not require the assistance of counsel in all criminal cases in state courts. The Betts case was a habeas corpus proceeding in which the petitioner, Betts, convicted in a Maryland state court of the crime of robbery, challenged the validity of his incarceration on the ground that he, an indigent, was denied counsel in alleged violation of the due process clause. The decision pointed out that the Sixth Amendment applies only to trials in the federal courts, and that the due process clause of the Fourteenth Amendment does not incorporate in itself the specific guarantees of the Sixth Amendment. The decision answered in the negative a question of whether due process demands that "in every criminal case, whatever the circumstances, a state must furnish counsel to an indigent defendant." The test appears to be whether a trial can be fairly conducted and justice accorded to the defendant without the assistance of counsel.

In *Bute v. Illinois,* 333 US 640, 68 SCt 763, 92 L Ed 986, the petitioner, Roy Bute, according to the record, had pleaded guilty to the crime of "taking indecent liberties with children," and had been sentenced to the Illinois penitentiary for not more than twenty years. While serving his sentence, and appearing pro se, Bute filed in the Supreme Court of Illinois a motion seeking leave to sue as an indigent for review of the proceedings which led to his judgment of conviction. The motion was granted and he

relied upon a claim that he had been denied representation by counsel in his criminal trial. The Supreme Court of Illinois affirmed the judgment of conviction and thereupon the United States Supreme Court granted certiorari. The Federal Supreme Court, in denying relief, said:

> "After exhaustive consideration of the subject, this Court has decided that the Fourteenth Amendment does not, through its due process clause or otherwise, have the effect of requiring the several states to conform the procedure of their state criminal trials to the precise procedure of the federal courts, even to the extent that the procedure of the federal courts is prescribed by the Federal Constitution or Bill of Rights.

> \* \* \*

> "\* \* \* So here the procedure followed by Illinois should not be held to violate the standard of permissible process of law broadly recognized by the Fourteenth Amendment unless the Illinois procedure violates 'the very essence of a scheme of ordered liberty' and its continuance would 'violate a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." '

> \* \* \*

> "\* \* \* The states are free to determine their own practice as to the assistance of counsel, subject to the general limitation that such practice shall not deprive the accused of life, liberty or property without due process of law."

The decision further indicated that when a record on appeal is silent as to a defendant's competency to conduct his own defense, competency may be presumed. See, in harmony with the decision just reviewed, *Crooker v. California,* 354 US 908, 77 SCt 1300, 1 L Ed 1426.

In applying the test announced in the decisions just reviewed, unless the presumption of competency is employed, the age, education, experience and intelligence of the defendant, together with the seriousness of the charge and the complexity of the issues, are relevant matters for consideration.

The decisions reviewed in preceding paragraphs were concerned with applications for the appointment of counsel to serve the accused in the trial court. The motion before us seeks the appointment of counsel to serve the defendant-appellant upon appeal.

Before the opinion in *Griffin v. State of Illinois* was announced many decisions had been rendered by the federal and state courts upon the question as to whether a convicted destitute defendant was entitled to court-appointed counsel upon appeal. We will now take note of some of them.

*United States v. Sevilla,* 174 F2d 879, held that although no statute authorized it to do so, the court nonetheless had authority to appoint counsel on appeal for a convicted destitute defendant.

*Reid v. Sanford,* 42 F Supp 300, ruled that a person charged with a crime is entitled to the assistance of counsel upon appeal. It regarded the appeal as a part of the trial.

*State ex rel. White v. Hilgemann,* 218 Ind 572, 34 NE2d 129, held that a determination of the question as to whether or not a convicted indigent defendant was entitled to a court-appointed attorney upon appeal "involves a consideration of the provisions of the Constitution of Indiana and of the due process clause of the federal constitution." In answering the question in the affirmative, the court declared:

"We have held that attorneys appointed by the court to defend poor persons in criminal actions

cannot be required to serve without compensation; that the Constitution requires that such persons shall have counsel; and that courts have inherent power to incur the expense and order compensation for counsel paid out of county funds."

The court, after citing one of its earlier decisions, ruled:

"The Constitution of Indiana guarantees an absolute right to a review by this court. * * * one accused of crime has the right to be provided with counsel literally 'at every stage of the proceedings' including the proceedings by which he may seek a review for error by appeal."

It stated that if the court-appointed counsel found no substantial error to assign upon appeal, the constitutional right is satisfied and the defendant cannot demand that other counsel be appointed for him.

*State ex rel. Walker v. Youngblood,* 225 Ind 375, 75 NE2d 551, after citing *White v. Hilgemann,* reaffirmed its holding. In that case, the petition for the appointment of counsel to represent the convicted defendant upon appeal had been denied by the trial judge. The Supreme Court (Indiana) held that the denial was error and appointed as the defendant's legal representative the state Public Defender.

In appraising the two Indiana decisions, consideration must be given to the fact that they grounded the right to counsel in the appellate court upon constitutional provisions and in so doing held that the Indiana constitution confers a right to appeal. Art I, § 13, of the Indiana constitution says: "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel; * * *." According to Beaney, Right to Counsel, p 82, the Indiana interpretation of this common constitutional provision "is

the most outspoken of all states." However, *Knox County Council v. State*, 217 Ind 493, 29 NE2d 405, 130 ALR 1427, indicated that the power to appoint counsel for an indigent is inherent in the court. It said, "they have inherent power to do everything that is necessary to carry out the purposes of their creation."

*Osborne v. Johnston*, 120 F2d 947, is one of several federal decisions that hold that a convicted defendant has no right to the appointment of counsel on appeal.

*Kelly v. Ragen*, 129 F2d 811, was a habeas corpus proceeding brought by a prisoner who was under a 15-year sentence, after his conviction of the crime of murder and its affirmance by the state Supreme Court. In the trial court he was represented by counsel of his own choice, but lacked legal representation upon appeal, although he had moved for the appointment of counsel to represent him at the expense of the state. The state Supreme Court, in denying his motion, stated that it was without power to furnish counsel. The federal Court of Appeals, in affirming the judgment of the United States District Court, which dismissed the petition for writ of habeas corpus, declared:

"* * * It is true that that Court refused to appoint counsel to represent him and it may be that the absence of counsel was responsible for his failure to present a properly signed and settled bill of exceptions. However, appellant does not, and we think he cannot contend that failure of that Court to appoint counsel at the expense of the State because of its stated lack of power to do so, constitutes a violation of his Constitutional rights, * * *."

*Lovvorn v. Johnston*, 118 F2d 704, cert den 314 US 607, 62 SCt 92, 86 L Ed 488, was a habeas corpus

proceeding in which the petitioner had been convicted in a preceding case of conspiracy and passing counterfeit money. In order to nullify the judgment of conviction, the petitioner alleged that he had been unable to appeal his conviction for lack of knowledge of how to file an appeal, and that his trial counsel had withdrawn shortly before the verdict without his consent and had not been replaced. The court rejected his claim on the ground that there is no constitutional right to the assistance of counsel in prosecuting an appeal.

*Ex parte Lee,* 123 F Supp 439 (affirmed on opinion below *Lee v. Kindelan,* 217 F2d 647, cert den 348 US 975, 75 SCt 538, 99 L Ed 759) was based upon an application for a writ of habeas corpus presented by Lee, who was serving a sentence pursuant to a judgment of conviction of the Superior Court of Rhode Island. He charged that his sentence was illegal because the trial court denied him the assistance of counsel to aid in perfecting his appeal to the Supreme Court of Rhode Island. His petition for the writ was denied. The decision cited *Betts v. Brady,* supra, as authority for the view that the right to have counsel appointed under the due process clause exists only if a fair hearing is not otherwise possible.

The above are not the only decisions which have resolved the issue as to the appointment of counsel for an indigent upon appeal. Citation to other decisions may be found in *People v. Breslin,* 4 NY2d 73, 149 NE2d 85; *People v. Logan,* 137 Cal App 331, 290 P2d 11; annotation 55 ALR2d 1072; Comments 25 U of Chi L Rev 143; The Griffin Case, 43 Corn L Q 1; Federalism and State Criminal Procedure, 70 Harv L Rev 413.

The decisions so far reviewed concerning an indi-

gent's right to the assistance of counsel upon appeal in criminal cases were rendered prior to *Griffin v. Illinois.* We will now consider some that were announced after that decision. *People v. Breslin,* supra, ruled upon an application similar to the one before us. After the defendant-appellant in that case had been found guilty of attempted extortion, his counsel took an appeal to the Appellate Division. A copy of the minutes of the trial was sent to that court and a copy was rendered available to the defendant-appellant. Shortly the defendant moved in the Appellate Division for the assignment of counsel. The motion was denied. The defendant presented to the Appellate Division a 16-page brief in which he raised numerous points of law. His conviction was unanimously affirmed by the Appellate Division and thereupon he appealed to the Court of Appeals, which assigned counsel for him. The assigned counsel submitted a brief in which he presented only the contention that the Appellate Division erred in refusing to assign counsel. The defendant filed a supplemental brief in which he presented several disputations, such as a claim that the trial court lacked jurisdiction. The Court of Appeals, upon review of the defendant's arguments, found them to be without merit and then considered the contention of assigned counsel that the Appellate Division erred in refusing to appoint an attorney. Five members of the court held that the refusal to assign counsel did not constitute error; two members, each of whom filed a separate opinion, dissented. The majority opinion held:

"There is no constitutional or statutory provision which requires the assignment of appeal counsel to an indigent defendant. In the leading case of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, the Supreme Court of the United States

held that a petitioner's conviction and sentence for robbery in a State court, which did not mandate counsel on arraignment and trial, was not a deprivation of his liberty without due process of law in violation of the Fourteenth Amendment, because of the court's refusal to appoint counsel at his request."

The decision took note of a New York statute which made provision for the assignment of counsel at the time of the arraignment, following which it said:

"* * * This right to assignment of counsel is important to a defendant in the various stages of the trial, for it is upon the record that is then made that a determination of guilt or innocence is predicated. Once the record has been made, it cannot ordinarily be changed, and an appellate tribunal is entirely competent to determine whether in a given case the aid of counsel is necessary. * * *

"Indeed numerous cases may be found in which the contention here made by defendant's counsel has been considered and rejected by the courts. Among the decisions which hold that a defendant was not constitutionally required to have counsel assigned on an appeal after a conviction are:"

At that point the decision cited a large number of federal and state decisions. At the conclusion of the citations, the decision proceeded with this statement:

"The rules enunciated by these decisions have not been affected by the decisions of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593; People v. Pride, 3 NY2d 545, 170 N.Y.S.2d 321, 147 N.E.2d 719, or People v. Kalan, 2 N.Y.2d 278, 159 N.Y.S.2d 480, 140 N.E.2d 357. In these cases, defendants did not have transcripts of the trial proceedings, which precluded them from obtaining adequate appellate review, no

matter how meritorious their cases. Here, defendant has had the transcript as well as a review of his case upon the record of the trial, by the Appellate Division."

The decision distinguished *Griffin v. Illinois* by saying, "Here, defendant has had the transcript."

In *Crooker v. State of California,* 26 Law Week 4504 (Sup Ct 1958), the court declared:

"The right of an accused to counsel for his defense, though not firmly fixed in our common-law heritage, is of significant importance to the preservation of liberty in this country. See 1 Cooley's Constitutional Limitations (8th ed.) 696-700; 2 Story on the Constitution (4th ed.) § 1794. That right, secured in state prosecutions by the Fourteenth Amendment guaranty of due process, includes not only the right to have an attorney appointed by the State in certain cases, but also the right of an accused to 'a fair opportunity to secure counsel of his own choice.' *Powell v. Alabama,* 287 U.S. 45, 53 (1932); *Chandler v. Fretag,* 348 U.S. 3 (1954).

"Under these principles, state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits, *Chandler v. Fretag, supra,* but also if he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' *Lisenba v. California,* 314 U.S. 219, 236 (1941). Cf. *Moore v. Michigan,* 355 U.S. 155, 160 (1957). The latter determination necessarily depends upon all the circumstances of the case."

*Johnson v. United States,* 352 US 565, 77 SCt 550, 1 L Ed2d 593, involved a certification made by a federal district court that an appeal by the convicted

defendant would be frivolous. Congress provided, in 28 USC, § 1915, for appeals in forma pauperis unless "the trial court certifies in writing that it (the appeal) is not taken in good faith." The Court of Appeals had affirmed the trial court's certification without assigning counsel to the defendant in prosecuting his application for leave to appeal in forma pauperis and without rendering available to him a stenographic transcript of the trial. In holding that the trial court's certification must be disregarded, the United States Supreme Court declared:

> "Since here the Court of Appeals did not assign counsel to assist petitioner in prosecuting his application for leave to appeal in forma pauperis and since it does not appear that the Court of Appeals assured petitioner adequate means of presenting it with a fair basis for determining whether the district court's certification was warranted, the judgment below must be vacated and the case remanded to the Court of Appeals for proceedings not inconsistent with this opinion."

In *People v. Logan,* 137 Cal App 331, 290 P2d 11, the defendants, who had been found guilty of selling a narcotic to a minor, petitioned the court for the appointment of counsel. The court referred the petition to the Los Angeles Bar Association Committee on Criminal Appeals for a report as to the merit of the petition. The committee assigned the inquiry to two of its members who made a written report stating that the petition disclosed no meritorious ground for appeal. The defendants were so advised and their time to file a brief was extended. Counsel was not appointed. No brief was filed. In affirming the judgment of conviction, the court stated:

> "Appointment of counsel to represent indigent appellants is not a matter of right as a part of

due process. It is discretionary with the court whether counsel should be appointed and a request for appointment should be denied if it clearly appears from the record that the appeal or other matter before the court is devoid of merit."

■ The above completes our treatment of the authorities. We believe that *Johnson v. United States* is readily distinguishable from this case. We are aware of no reason for inferring that *Betts v. Brady,* supra, which held that the due process clause does not require the appointment of counsel in state criminal cases if the cause can be "fairly conducted and justice accorded," has undergone judicial erosion, although *Griffin v. Illinois* added to its demand that the poor shall be given as broad appellate review as those in favorable financial circumstances. In short, both the due process and equal protection clauses of the Fourteenth Amendment protect the rights of a defendant in a state court who is charged with the commission of crime.

We are now required to determine whether (1) an assertion by an appellant in a non-capital case that, in his opinion, he has meritorious grounds for appeal demands that the court appoint counsel for him, and (2) this court has power to make the appointment if one must be made.

Practice of long standing in this state requires that counsel be appointed by the trial bench for an indigent defendant who is charged with crime, unless he waives the right. No practice has developed in this court for the appointment of counsel. In several cases counsel appointed by the circuit court, upon meeting with defeat in that court, have appealed the case to this court and have represented their client here.

■ Constitutional provisions such as Art I, § 11, Oregon Constitution, have frequently been construed as going no further than to assure the defendant that he may be heard by himself and the counsel which he chose to employ. The reason for that construction is the fact that until 1836 a defendant in a felony case in England had no right to counsel. Beaney, The Right to Counsel, p 8. For citations to decisions so holding under constitutional provisions similar to Art I, § 11, Oregon Constitution, see Beaney, The Right to Counsel, p 80. When the constitutional provision is construed in that manner, the accused has the right to be heard through his counsel, and the legislature is prohibited from destroying the right. However, as we have noticed, the Indiana constitutional provision bearing upon the right to representation by counsel is interpreted to mean that a penniless accused may demand that counsel be appointed for him whether the charge is a misdemeanor or a felony and whether he makes the demand in the appellate or the trial court. Very likely Art I, § 11, of the Oregon Constitution, which grants the accused the right "to be heard by himself and counsel," means that he shall be heard by counsel of his own choice if he wishes, but does not confer upon any court power to appoint counsel.

The fact that we do not believe that Art I, § 11, Oregon Constitution, confers power to appoint counsel does not mean that courts lack power to appoint counsel for the poor. We have taken note of statutory provisions which confer power of that kind. Every court of general jurisdiction upon being created has incidental powers in substantially the same way as a person who has been appointed agent for another. It is customary in the instance of courts to speak of the incidental powers as inherent. They enable a court to

appoint a clerk to maintain records and a bailiff to maintain order. An attorney is an officer of the court and it would be a novelty to hold that a court could not appoint one of its officers to assist it in doing justice when it developed that the court could not do justice without the aid of such an officer.

From *Powell v. Alabama,* supra, the following is taken:

"* * * The duty of the trial court to appoint counsel under such circumstances is clear, as it is clear under circumstances such as are disclosed by the record here; and its power to do so, even in the absence of a statute, can not be questioned. Attorneys are officers of the court, and are bound to render service when required by such an appointment. See Cooley, Const. Lim. supra, 700 and note.

"The United States by statute and every state in the Union by express provision of law, or by the determination of its courts, make it the duty of the trial judge, where the accused is unable to employ counsel, to appoint counsel for him. In most states the rule applies broadly to all criminal prosecutions, in others it is limited to the more serious crimes, and in a very limited number, to capital cases. A rule adopted with such unanimous accord reflects, if it does not establish the inherent right to have counsel appointed at least in cases like the present, and lends convincing support to the conclusion we have reached as to the fundamental nature of that right."

*State v. Hudson,* 55 RI 141, 179 A 130, 100 ALR 313, ruled:

"Irrespective of statute, it is generally held that a trial court has inherent power to appoint an attorney for an indigent person in his defense before a jury."

We quote the following from 50 Am Jur, Attorneys at Law, § 33:

"The power to appoint counsel for an indigent accused has been said to be an inherent power, although in some jurisdictions the power emanates from the legislature and its exercise is subject to the regulation and control of that department."

■ We believe that all courts of this state have inherent power to appoint counsel for an indigent person accused of a crime when it is established that a need for counsel exists and provided that the situation is not met by one of the statutes of which we have taken notice.

■ It follows from the conclusions just stated that we have power to appoint counsel for this defendant-appellant and to comply in full with all of the demands of the equal protection and due process clauses of the United States Constitution as construed in *Griffin v. State of Illinois,* supra.

■ The question now presents itself as to whether this court should at this moment, when it knows virtually nothing about the would-be appeal, appoint counsel for the defendant-appellant or whether we may wait until the transcript is filed with our clerk. *Betts v. Brady,* supra, demands only that an appointment should be made if the appeal cannot be fairly conducted and justice cannot be done. The equal protection clause does not require that appellants in criminal cases, regardless of the merit of their appeal, should be given attorneys.

Normally, no hardship will be cast upon any appellant who petitions for the appointment of counsel or the grant of a transcript if his petition (1) is made only after notice of appeal has been given, (2) is accompanied with a financial statement sufficiently in

detail to enable a court to determine the financial status of the petitioner, (3) states the reasons which persuade the defendant to believe that he possesses meritorious grounds for appeal, and (4) submits to this court the name of the attorney, if any, who represented him in the trial court.

■ In the present case, a transcript of the record will soon reach our files and the defendant's hands. That document will indicate whether the defendant was represented by counsel in the trial court and will give the attorney's name. It may be that the attorney will be willing to express a belief as to the possible merits of this appeal and indicate the rulings, if any, which he thinks are worthy of review. Likewise, the defendant, with the transcript in his possession, may be willing to cite occurrences that took place during the trial which he wishes this court to review. Upon receipt of the transcript and any other information concerning the contemplated appeal that reaches the files of our clerk, we will give all of it attention. Art I, § 10, Constitution of Oregon, says: "Justice shall be administered openly and without purchase, complete and without delay." We propose to adhere to that mandate.

We think that we can make a better determination of the petition for the appointment of counsel after we have received the transcript than we can at this point. To take a step in the dark when light will soon come appeals to us as an ill-advised course. When the transcript and other possible information is before us, we will pass upon the petition. If the record should disclose questions relating to the fairness of the trial or to rulings claimed to be prejudicial to the defendant of such a nature as to require the aid of counsel for their adequate presentation, we will appoint counsel to

represent the defendant. For the present we, therefore, rule that we have full power to appoint counsel, but that no appointment will be made today. The appointment, or its denial, will await the receipt of the transcript and any other information which may properly come.

Until we know more about the would-be appeal, the appellant's petition for the appointment of counsel is denied.

WARNER, J., specially concurring.

I concur in the statement of the law which leads the majority to the conclusion that this court has the power and duty to appoint counsel to assist indigent persons convicted of felonies to perfect an appeal when it reasonably appears that such an appeal is justified.

I cannot join in the formula which the opinion sets up for the determination of the necessity for such an appointment, for the reason that it omits a step which I deem necessary in fairness to the applicant and as a time-saving device for the court.

I would place no great value on what the party might state in his application as representing appealable error. No matter what his education or experience, it would be impossible for him to make an adequate or sufficient presentation of alleged errors, except in some rare cases, or unless applicant was skilled in the law. The majority opinion suggests to me that unless his trial attorney might "be willing" to express a belief on the probable merits of an appeal, this court will make such an examination of the record without independent aid and, predicated thereon, say that there is or is not warrant for an appeal. I do not gainsay the ability of the court to come to a sound

conclusion by reason of its examination of the transcript, but, aside from the burden such procedure would cast upon the court, I feel the value of an independent examination, especially if made by applicant's trial counsel, would give greater weight to the ultimate conclusion for or against the need of counsel to perfect an appeal.

I would make it clear in the majority opinion that when the application for the appointment of counsel, accompanied by the transcript of testimony, is received by the clerk of the court, our only concern at that juncture will be to satisfy ourselves that the applicant is indigent. If we so find, we thereupon pass the application, together with the transcript of testimony, to applicant's attorney of record in the trial of the matter for examination with directions to certify within a definite time whether or not in his opinion the applicant has good cause for appeal, and if he so finds, to briefly state his reasons therefor. If the applicant had no counsel to defend him in the lower court, then I would have this court refer the application and transcript to an attorney of our selection or a committee of the bar for such a preliminary investigation and report as is done by the District Court of Appeal, Second District, Division 3, California. *People v. Logan,* 137 Cal App 331, 290 P2d 11.

If counsel examining the record certify that in their opinion no grounds for appeal are shown, then this court would be warranted in denying the application. If, on the other hand, counsel certify that in their opinion there are grounds warranting an appeal, then it should be incumbent upon this court, without further examination of the record here, to forthwith appoint counsel to bring the matter to the attention of the court in regular course by preparing necessary

briefs and making an oral presentation in behalf of the applicant.

O'CONNELL, J., concurring in part; dissenting in part.

I concur in that part of the opinion in which it is held that an indigent defendant convicted of a crime has the right to the assignment of counsel to aid him in his appeal to this court whenever that is necessary to afford him equal justice. But I cannot agree with the qualifications placed upon this right by the majority of the court. The majority would postpone our decision as to whether the indigent defendant is entitled to counsel on appeal until we had considered the appeal on its merits. The premise is that a mentally competent person, although untrained in the law, is capable of adequately presenting to this court a sufficient description of his claims to enable us to safeguard his constitutional rights. I cannot agree with this premise. The fear is expressed in the majority opinion that if "free appellate review" is afforded indigent defendants this court will be disabled by a flood of appeals. That may well be true, but it is an irrelevance if the constitutional guarantee of equal protection of the laws and due process of law, under the Fourteenth Amendment, requires us to furnish counsel in such cases. Admittedly, there is no clear command in the cases decided by the United States Supreme Court that we do so. But the reasoning in *Griffin v. Illinois,* 351 US 12 (1955), when laid upon the facts of the present case, fits so snugly that I feel that it must control our decision. In the Griffin case the court held that the defendant was entitled on appeal to a transcript of the trial court proceedings, because a denial of the use of the transcript would deny "adequate appellate review to the poor while granting

such review to all others." *Griffin v. Illinois,* supra, at page 13. But, as Justice Qua says, "It seems clear that no special significance attaches to the fact that the expense in the Griffin case happened to be the cost of a transcript instead of some other comparable expense necessary to a fair and adequate appeal under state law." 25 U Chi L Rev 143 at 147-8. As I see it, the assistance of counsel is as important in the protection of one's rights on appeal as a transcript of proceedings of the trial court. In many cases the need for counsel on appeal is as great as it is at the trial of the case. The majority recognizes that under some circumstances counsel on appeal would be essential to satisfy constitutional guarantees. But it assumes that the court itself can afford the needed protection by a scrutiny of a document prepared by the defendant himself. I do not believe that this would provide the indigent defendant with the protection which he would receive were he represented by counsel. In the first place, this court, with a large backlog of cases, is not in a position to spend the time necessary to search out possible errors in the proceedings of the trial court which might be disclosed by the defendant's "document." This same point is made in the dissenting opinion in *People v. Breslin,* 172 NYS2d 157, 164 (1958), where it was said:

"It is suggested that an appellate tribunal, having the record before it, is entirely competent to review the case and pass upon the merits without the aid of counsel. However, experience has demonstrated that there are just not enough hours in the day to permit judges of busy appellate courts, no matter how conscientious and willing, to examine and read the records before them as carefully or as critically as single-minded counsel for the appellant. And, if, as is the case where an indigent

defendant is involved, there is but one copy of the record, and that typewritten, the task of adequate review without the aid of appellate counsel to point the alleged errors and call attention to the asserted questions of law, some of which might otherwise escape the judges, approaches the impossible."

The argument that the court itself is adequate counsel for the indigent defendant was answered in *Powell v. Alabama,* 287 US 45 (1932). There the court dealt with the question of the defendant's right to counsel at the trial stage of his case, but Mr. Justice Sutherland's statement can be applied as well to a case involving the defendant's right on appeal. He said:

"* * * But how can a judge, whose functions are purely judicial, effectively discharge the obligations of counsel for the accused? He can and should see to it that in the proceedings before the court the accused shall be dealt with justly and fairly. He cannot investigate the facts, advise and direct the defense, or participate in those necessary conferences between counsel and accused which sometimes partake of the inviolable character of the confessional." 287 US 45 at page 61, 77 L ed 158 at 166.

Even if we as a court should apply ourselves diligently to the task of searching the appellant's document for error it may not be revealed, because the defendant, untrained in the law, may not know what to say in order to suggest to us the possibility of error in the proceedings below.

Our system of appellate review, including the opportunity for oral argument, is predicated upon the assumption that advocacy will be helpful to the parties and to the court in arriving at the proper conclusion. To say, as the majority seems to say, that advocacy is not important in influencing the court's decision in

these cases, or that the court itself can take over that role along with its judicial functions is to disregard the realities of our legal procedures.

This court is .already harassed by a considerable volume of frivolous appeals in criminal cases. It is almost certain that the guarantee of counsel on appeal to indigent defendants would increase the volume of such appeals. As a consequence we are forced to postpone our decisions in meritorious cases. But we cannot deny a defendant the equal protection of the laws simply because some defendants use the state's legal machinery for frivolous purposes. If the abuse of the privilege of appeal is to be eliminated it must be accomplished by some procedure which does not deprive a defendant of his constitutional rights.

McALLISTER, J., joins in this opinion.

## ON THE MERITS

*Robert M. Mulvey*, Oregon City, argued the cause and filed a brief for appellant.

*William E. Frazier*, Deputy District Attorney, Oregon City, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, Salem, and Winston L. Bradshaw, District Attorney, Oregon City.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

SLOAN, J.

Defendant was convicted by a verdict of a jury of the crime of assault with intent to commit rape. He appeals. The assignments of error require reference to some of the evidence. The actual parties will be referred to as the state and defendant; the complaining witness by her given name of Peggy.

The charging part of the indictment reads:

"The said Jack Robert Delaney on or about the 6th day of March, A. D., 1958, in the said County of Clackamas and State of Oregon, then and there being, did then and unlawfully and feloniously assault one, Peggy Joyce Wilson, who was then and there a female over the age of sixteen years, to-wit:

of the age of twenty-five years, by then and there forcibly and violently grasping, seizing, assaulting, grappling, clinching, beating and threatening the said Peggy Joyce Wilson, with intent then and there on the part of him, the said Jack Robert Delaney, to then and there unlawfully and feloniously forcibly ravish the said Peggy Joyce Wilson, said act of defendant being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The evidence presented by the state to support the indictment disclosed that on the night in question Peggy was employed in a beer tavern some place on 82nd Street in Portland. Defendant had been a frequenter of this tavern, was acquainted with Peggy and had been in the tavern during the evening of March 5, 1958. Defendant left the tavern before it was closed. Closing time was 1:00 a.m. Peggy testified that when she completed her duties for the night and entered her car to leave defendant was in the back seat of her car. He held a gun in his hand pointed to her and commanded her to drive as he directed. Peggy testified that defendant forced her to drive her car into the mountains east of Molalla to an abandoned logger's shack in a cut-over timber area. This was in Clackamas county.

We will omit the details of the assault alleged to have followed their arrival at the shack. Peggy testified that after they reached the shack the defendant bound her hands and feet with adhesive tape and then forcibly attempted to rape her; that despite her handicap of bound hands and feet she was able to resist defendant and that defendant did not consummate his design. They remained at the shack the remainder of the night.

There is no need to relate their activity of the next day other than to say that during the course of the

day the car became stuck in the mud. There is conflict as to how this occurred. In any event, they were forced to walk out of the place. They stopped at a house along their route and the occupant thereof drove them to the house of a friend of defendant in Molalla. Peggy swore that the entire episode was the result of force and threats of force on the part of defendant. At Molalla she caused defendant to be arrested.

The defendant testified in his own behalf. He admits that he encountered Peggy at her car as she left work. He claims, however, that his purpose was to ask her to push his stalled car. He said that she suggested they go some place for a drink and that while driving she suggested that she accompany him on his planned camping trip to the abandoned shack. He admitted the trip to the shack but contended that it was voluntary upon Peggy's part. Defendant's testimony was that everything was voluntary and cooperative until the car became stuck in the mud the next day and that Peggy then became alarmed about her husband's reaction to her absence. Defendant's principal defense was that the alleged assault was a device and scheme Peggy concocted to avoid trouble with her husband.

The verdict demonstrates that the jury believed Peggy and not the defendant.

The first assignment of error challenges the indictment. The defendant demurred to the indictment on the ground that it charged two crimes. One, the crime of assault to commit rape and, secondly, that it charged a threat to commit a felony. The defendant seizes upon the words in the indictment "and threatening the said Peggy Joyce Wilson . . . to then and there . . . ravish her" as the basis for contending the indictment charges the crime of threatening to commit a felony in viola-

tion of ORS 161.330. The trial court overruled the demurrer. No error was committed by the trial court in doing so.

■■ The indictment charges but a single offense. The nature of the assault is described as having been committed by more than one form of act. That is, by "grasping, seizing, assaulting, grappling, clinching, beating and threatening. . . ." The fact that the indictment describes the alleged assault by more than one form of act gives no license for the defendant to strike intervening words and attempt to alter the clear meaning of the indictment. It is not required that an indictment may charge only one means by which a crime may have been committed.

> "The general rule is that where a single offense may be committed by several means it may be charged in a single count to have been so committed, if the ways or means are not repugant [sic]; and in this state as in other states it is provided by statute that when the crime may be committed by the use of different means the indictment may allege the means in the alternative: Section 1442, Or. L. [ORS 132.560]" *State v. Laundy*, (1922) 103 Or 443, 466, 204 P 958, 206 P 290.

> "We do not believe that two different crimes are stated in the indictment. We think the defendants are charged with only one offense. There are two different statements of the way in which this offense was committed. Either statement standing alone would constitute a crime; but both statements combined would be only one offense. If only one of the ways in which the defendants are charged with having violated the act had been alleged and they had been tried upon that one charge, they could not thereafter have been tried on an indictment charging another violation of the act based upon the same transaction. * * *" *State v. Gerritson et al*, (1928) 124 Or 525, 532, 265 P 422.

See also *State v. Anderson*, (1958) 215 Or 72, 332 P2d 884; *State v. Fiester*, (1897) 32 Or 254, 50 P 561.

In this case the indictment advised the defendant in plain words the nature of the charge. A "person of common understanding" would have no difficulty in knowing the crime charged. ORS 132.520 (2).

■ The next assignment contends that the court erred in permitting the defendant to be asked on cross-examination if he had engaged in intercourse with Peggy during the time they were at the shack. It is argued that the defendant's affirmative answer to such a question rendered him guilty of a crime other than that charged in the indictment.

It has already been mentioned that defendant's defense was that this was a voluntary lark. Even though defendant, on direct examination, did not assert that he had had intercourse with Peggy, the implication was certainly there. It is difficult to see how this could have prejudiced the defendant when it was merely added emphasis to his defense that not force but voluntary, if not enthusiastic, acquiescence was involved. There is no error in the assignment.

The third assignment is directed at the failure of the trial court to instruct the jury on the lesser crime of assault. No request was made of the court to so instruct nor was it otherwise called to the court's attention. We are asked, however, to apply former rule 50 and notice the error regardless. It is said that the error was so prejudicial as to require us to notice the error and allow a new trial.

■ In this case we doubt that if the trial court, even upon proper request, had refused to instruct as to assault only that such refusal would have been error. We are certain it would not have been prejudicial error.

An instruction as to a lesser offense is only required when the evidence permits a finding that an offense of lesser degree than charged may have been committed. *State v. Nodine*, (1953) 198 Or 679, 687, 259 P2d 1056; *State v. Coffman*, (1943) 171 Or 166, 171, 136 P2d 687; *State v. Duffy*, (1931) 135 Or 290, 308, 295 P 953. In *State v. Coffman*, supra, the following is adopted from an opinion of the Supreme Court of the United States:

" 'To instruct the jury in a criminal case that the defendant cannot properly be convicted of a crime less than that charged, or to refuse to instruct them in respect to the lesser offense that might, under some circumstances, be included in the one so charged, there being no evidence whatever upon which any verdict could be properly returned except one of guilty or one of not guilty of the particular offense charged—is not error; for the instructing or refusing to instruct, under the circumstances named, rests upon legal principles or presumptions which it is the province of the court to declare for the guidance of the jury.' Sparf, et al. v. United States, 156 U.S. 51, 15 S. Ct. 273, 39 L.Ed. 343." 171 Or at p 171.

In the present case the defendant testified that there was no assault of any kind with any intent; he denied any conduct toward Peggy that partook of any of the elements of assault. To the contrary, as before mentioned, he claimed acquiescence in every part of the relationship that had reference to the actual crime charged. The defendant's testimony that after the car got stuck Peggy's attitude changed has nothing to do with whether or not he assaulted her several hours before. That testimony did no more than cast reflection on the truth or falsity of the claimed assault. It had no direct relationship to the actual crime.

Consequently, in this case it was a clear-cut issue: Did defendant have to assault the woman in order to

accomplish his purpose or did he proceed by the consent route? The evidence does not show any in-between. If defendant assaulted her at all it was only for the one purpose. Under such circumstances there was no prejudicial error in the court's failure to instruct upon the lesser crime of assault. *State v. Duffy*, supra. That is particularly true when no request for such an instruction was made. *State v. Nodine*, supra.

The last assignment is based upon the admission of certain evidence which defendant claims was highly prejudicial. No exception was taken during the trial to the admission of any of the evidence now complained of. The defendant now argues that he was poorly defended by counsel appointed for that purpose and asks that we find that he did not have a fair trial. He relies on *State v. Bouse*, (1953) 199 Or 676, 264 P2d 800; *State v. Nodine*, supra, and similar cases.

We find no reason to decide if it was error to admit the evidence complained of. In no event was it prejudicial error. At least not sufficiently so to warrant a new trial because of it. There is no occasion here to recite the evidence in question. Its purpose was to corroborate, in certain details, some of Peggy's testimony. It could not be said that any part or all of the challenged evidence had a particularly material bearing on the truth or falsity of Peggy's story. There was otherwise submitted substantial evidence to permit the jury to believe or doubt Peggy's story. There was sharp conflict in the testimony of the participants and evidence to corroborate the testimony of both Peggy and defendant. The details complained of could not have been decisive. The admission of the evidence does not raise even an implication that defendant did not have a fair trial.

It is appropriate to mention that the trial court

was careful to preserve to the defendant every right and opportunity to adequately present his defense. The record in the case presents every part of the trial from the *voir dire* examination of the jury to the final arguments of counsel. Every conference in chambers is reported. The only exception is a discussion of the law involved on one issue. Otherwise, we are favored with a complete record. The record reflects that the trial judge presided with painstaking thoroughness and care for defendant's rights. He gave to the defendant every possible benefit.

Neither has the defendant any reason to complain of his appointed defense counsel. The record shows that counsel proceeded with diligence and care. He was handicapped by intrusions into the case by the defendant. In fact, the record shows that the defense of the case was engineered by defendant himself. If any mistakes were made they were his own.

We have no hesitancy in demanding high standards of duty of attorneys appointed to defend indigent persons charged with crime. And, upon a proper showing, the court has not refused to grant a new trial when the record reflects a prejudicial lack of attention and diligence upon the part of such counsel. But when the appointed attorney has faithfully discharged his duty we will not listen to irresponsible and unlicensed abuse. And particularly so when the record, as here, shows patently that the defendant has seen fit to govern the conduct of his defense. So if the one being defended desires to run his own show he must pay the piper.

Both the attorney appointed to defend the defendant on trial and the attorney who prepared and presented this appeal fully performed their duty to the defendant. There is nothing in this record to establish any departure from the requirements of a fair trial.

We are well aware that the defendant himself wants us to reweigh the evidence, as a jury, and find him not guilty. That we cannot do. The defendant presented all of his evidence to the jury and that body found him guilty. That is conclusive.

The judgment is affirmed.