**Jack R. DELANEY, Plaintiff,**

v.

**Joe SHOBE et al., Defendants.**

United States District Court
D. Oregon.

Nov. 12, 1964.

Jack R. Delaney, pro. per.

C. L. Marsters, Asst. Atty. Gen., for State of Oregon, for defendants.

EAST, District Judge.

The plaintiff has tendered for in forma pauperis filing his pro. per. "Complaint for Damages for Deprivation of Rights, Privileges and Immunity Secured by the Constitution of the United States."

Plaintiff's affidavit of indigency asserts he is without "property, money or means * * * to * * * pay customary * * * fees and costs," but it would appear that he has little faith in his cause, as he fails to aver his "belief that he is entitled to redress," as commanded by § 1915, Title 28 U.S.C.A. The complaint fails to substantially comply with local Rules of Court as to form, and as for substance, it utterly fails to state facts sufficient to constitute a cause of action against any of the defendants and ought to be summarily returned to the plaintiff without comment. However, since I am able to fill in the omissions

and gaps in the tendered complaint with facts commonly known and judicially noticed, and in the interests of conserving the time and effort of all concerned, I will deal with the plaintiff's motion to file and prosecute his said complaint and cause in forma pauperis.

I judicially note a present pending in forma pauperis habeas (§ 2254, Title 28 U.S.C.A.) proceeding in this Court, Civil No. 64–434, wherein the plaintiff is petitioner and the defendant, Clarence T. Gladden, is respondent, and the revealed fact that the plaintiff is an inmate of the Oregon State Penitentiary.

Judge Sherrill Halbert, of the Northern District of California, in whose Division is located Folsom Prison, has had extensive experience in dealing with pro. per. in forma pauperis civil proceedings, and he advises, in Nichols v. McGee, 169 F.Supp. 721, at p. 723:

"Leave to proceed in forma pauperis is a privilege and not a right (Clough v. Hunter, 10 Cir., 191 F.2d 516; Willis v. Utecht, 8 Cir., 185 F.2d 210; Johnson v. Hunter, 10 Cir., 144 F.2d 565; Prince v. Klune, 80 U.S.App.D.C. 31, 148 F.2d 18; and Dorsey v. Gill, 80 U.S.App.D.C. 9, 148 F.2d 857), and a duty is imposed on this Court to examine any motion seeking leave to proceed in forma pauperis, in the light of the documents submitted in connection with it, to determine whether the proposed proceeding has merit. If, after an examination of the proposed proceeding, it is apparent that it is without merit, the Court is duty bound to deny the motion seeking leave to proceed in forma pauperis. [Citing cases.]"

So, with those fundamental rules in mind, I examine and consider the complaint which the plaintiff seeks leave to file and ascertain whether it has merit.

The complaint does not give a reader any information as to the identity of any of the defendants or their official capacities, respectively, or of the factual and legal relationship between the plaintiff and any of the defendants. However, common knowledge and the official publications of the State of Oregon tell us that the defendant Joe Shobe is the duly elected and qualified Sheriff of Clackamas County, Oregon; the defendant Mark O. Hatfield is the duly elected and qualified Governor of the State of Oregon and is a member of the Board of Control of that State; and the defendant Clarence T. Gladden is the duly designated and acting Warden of the Oregon State Penitentiary at Salem, Oregon.

Plaintiff's complaint alleges, *inter alia*, that the:

"* * * defendants Mark O. Hatfield and Clarence T. Gladden have deprived the plaintiff of liberty under color of the laws of the State of Oregon since the 9th day of July 1958 A.D. contrary to the * * * United States Constitution and that said deprival of liberty was continual until * * * (presently);

"Defendant Shobe aided and abetted Mark O. Hatfield and Clarence T. Gladden by deprival of liberty from September, 1958 A.D. until May, 1960 A.D. * * *

"* * * plaintiff was during the period * * * subjected to involuntary servitude contrary to the * * * United States Constitution which prohibits involuntary servitude except for 'punishment for crime whereof the party shall have been duly convicted';

"* * * plaintiff was not duly convicted of any crime * * *;

"* * * plaintiff, a citizen of the United States, was deprived of his liberty without due process of law on the pretext of a lawful conviction and that said conviction was obtained contrary to * * * the United States Constitution * * *; and

"* * * plaintiff has suffered grievous injury at the hands of the defendants. * * * Wherefore, the plaintiff demands (sums of money) and attorney's fees in and for gen-

eral damages and * * * punitive damages from the defendants."

I also judicially note from the proceedings (Civil 64–434) that the plaintiff's custody by the defendant Clarence T. Gladden, as Warden, is under a judgment of conviction and sentence of imprisonment entered by the Circuit Court of the State of Oregon for Clackamas County on July 9, 1958, from which judgment of conviction and sentence the plaintiff seeks relief under federal claim, and further, that said proceedings are now stayed pending amendment by the petitioner showing exhaustion of state remedies for the vindication of his federal claims.

In view of the presently pending proceedings, nothing will be gained in treating this complaint as a new or subsequent habeas collateral attack upon the plaintiff's judgment of conviction and sentence of imprisonment.

Then, taking plaintiff at his word, where he claims " * * * this action arises under * * * the Constitution of the United States and under the provisions of U.S.C. Title 28 § 1343," it would appear that if this action were filed, it should be abated until the basic premise of unlawful judgment of conviction and sentence is established in Civil No. 64–434. However, again in the interests of conserving time and effort, I shall proceed to ascertain the merits of the plaintiff's Civil Rights complaint and cause upon the assumption that the Oregon judgment of conviction and sentence of imprisonment is, as alleged by the plaintiff, invalid upon federal claims. Again drawing upon judicial knowledge from the Civil No. 64–434 proceedings, I note that the Oregon judgment of conviction and sentence of imprisonment is due and regular upon its face.

28 U.S.C. § 1343 (1963), provides in part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; * * *"

42 U.S.C. § 1983 (1963), provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

With the advent of Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the authorities have generally recognized legislative and other governmental immunities from the thrust of the Act. Judge Magruder, in Francis v. Lyman, 216 F.2d 583, at p. 587 (1st Cir. 1954), teaches:

"The courts may refuse to regard the statute as an isolated phenomenon, sticking out like a sore thumb if given a strict, literal application; and upon the contrary may conceive it to be their duty, in applying the statutory language, to fit the statute as harmoniously as may be into the familiar and generally accepted legal background, and to confine its application, within reason, to those situations which might possibly have had the approval of Congress if it had specifically adverted to the particular cases, bearing in mind the basic purposes which gave rise to the legislation in the first place."

As one writer expressed it, "the heroes of the story, the federal judges, resorted to their powerful weapon of creative law making through interpretation, and final-

ly triumphed" over the "villain in the drama * * * the drastic language of the Act, * * *" Davis, Administrative Law Treatise, 478 (1959). And, as Davis has also succinctly noted, the statute has now "succumbed to strong interpretation that rests upon little but practical judgment about practical needs." Ibid. .

■ A reader of the complaint, in light of the commonly known and judicially noticed additional facts, would take it that the:

Defendant Clarence T. Gladden, as Warden, had custody of the plaintiff pursuant to the state court judgment of conviction and sentence of imprisonment, valid on its face, but now assumed invalid by reason of latent Constitutional infringements, for an extended time;

Defendant Mark O. Hatfield, as Governor, countenanced, suffered, and permitted the imprisonment to continue; and defendant Joe Shobe for a time had custody of the plaintiff pursuant to the judgment,[1] either in his capacity as Sheriff, or as designee of the Warden.

Viewing plaintiff's complaint in this posture and light, the nonliability of the respective defendants is clearly pointed up and established.

■ a) As for the defendant Clarence T. Gladden, as Warden, the unvarying rule appears to be that jailers, institutional superintendents and keepers of almost all varieties enjoy a sweeping immunity under the Civil Rights Act. Indeed, as will be noted shortly, the United States Court of Appeals for the Ninth Circuit has extended the immunity to cases involving alleged malice.

In the landmark case of Francis v. Lyman, supra, two defendants were institutional superintendents. The court treated them as jailers and held the immunity was unqualified when all the superintendent had done was

"to execute in good faith a judicial warrant of commitment issued by a

court of general jurisdiction and in all respects fair and regular on its face." 216 F.2d at 588.

The Court also noted that

"The privilege of the jailer to impose the confinement in such a case is, we think, quite as time-honored in the Anglo-American common law as is the immunity of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities." Id. at 588–589.

In Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959), a case taken on appeal from this Court, one defendant was the superintendent of a state mental institution. The Court of Appeals affirmed this Court's dismissal of the complaint against the superintendent, and held, 268 F.2d at 300:

"We think the failure of a jailer or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations of malice, motive or intent. His act is required by law. Even if the statute were later held void or the conviction later set aside, so long as he acted under authority of the writ or warrant, he was performing a duty which the law *at that time* required him to perform." [Court's emphasis.]

In Rhodes v. Houston, 202 F.Supp. 624 (D.Neb.1962), aff'd. 309 F.2d 959 (8th Cir. 1962), cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963), the Court approved the rule of Francis v. Lyman, supra, and dismissed the complaint as against a warden.

In Kenney v. Hatfield, 132 F.Supp. 814 (W.D.Mich.1955), one defendant was medical superintendent of a state hospital. The Court found him immune under the Civil Rights Act, noting that

"The order is fair on its face and is one to which the defendants were required to be amenable. These de-

---

1. This period of time appears to coincide with the plaintiff's appeal of the judgment of conviction to the Oregon Su-

preme Court. State v. Delaney, 221 Or. 620, n. 3, 332 P.2d 71, 351 P.2d 85.

-fendants not only should not be expected, but should not be permitted, to go behind a court order, which appears on its face to be valid, and attempt to question the propriety of the entry of the order, * * * " Id. at 818.

Nothing in Oregon Revised Statutes indicates that the Warden of the State Penitentiary is empowered or authorized, as a matter of course or at his discretion, to examine the convictions of men sent to him for custody.[2] Apart from the common-law tradition, and the very explicit holdings of the Court of Appeals for the Ninth Circuit, a "practical judgment about practical needs"—noted by Professor Davis—clearly points toward very broad immunity, and certain immunity in this case, for the Warden.

■ b) As for the defendant Joe Shobe, what has been said as to the immunity of the Warden applies with equal force and effect to him, either as designee of the Warden or in his own capacity as sheriff.[3]

In Dunn v. Gazzola, 216 F.2d 709 (1st Cir. 1954), defendant was a police officer who delivered plaintiff to a reformatory superintendent pursuant to a court's order of commitment. The complaint was based upon the allegedly unconstitutional nature of the conviction. The action against the officer was dismissed "so far as respects his act of delivering" plaintiff to institutional custody as ordered. Id. at 710.

c) As for the defendant Mark O. Hatfield, as Governor, there appears to be a virtual absence of federal case law on a Governor's immunity in a case like the instant one. However, certain constitutional conceptions, if not again the force of necessity, point the way to an obvious result.

■■ No Governor has an affirmative federal constitutional obligation to supplement normal judicial channels of relief by examining criminal convictions on their merits for constitutional or other flaws; indeed, organic law commands the executive to employ all forces at his command in enforcement and execution of the lawful-appearing process and judgment of the judiciary. To be sure, the Governor in Oregon, as in most states, is vested with a general power to reprieve, commute and pardon (O.R.S. § 143.010 (1963)), from the effect of, but not to declare invalid, such lawful-appearing process and judgment. The executive's prerogative of reprieve, commutation and pardon are at the Governor's own discretion to be exercised without limitation, except in good faith, and for which he owes no accounting. As was noted in Hoffman v. Halden, supra, 268 F.2d at p. 300:

"governmental officers are generally not liable for their discretionary acts done pursuant to their lawful authority."

If this be true for discretionary actions, a fortiori it should be true for discretionary inaction, as is involved here.

■ As a member of the Board of Control, the Governor's freedom from liability is even clearer. Oregon law empowers neither any individual member, as such, nor the Board collectively, to look behind convictions of prison inmates for constitutional or other irregularities, and to free the inmates because of those irregularities.[4]

---

2. "When the judgment is imprisonment in the penitentiary * * * the sheriff shall deliver the defendant, together with a copy of the entry of judgment, to the executive head of the designated institution." O.R.S. 137.320.
"The warden (of the Oregon State Penitentiary):
"(1) Shall be the chief executive officer of the penitentiary.
"(2) Shall keep all convicts safely, according to law and the rules and regulations of the board." O.R.S. 421.015.

3. ORS 137.320, supra. Oregon statutes prior to 1963 amendments provided that sentences of imprisonment in the penitentiary should be stayed on appeal, and at the defendant's election he should be restored to place of original custody at time of trial.

4. ORS 179.040, 179.070, and 179.320.

Accordingly, neither plaintiff's complaint nor any amendments thereof can present a meritorious cause against any of the defendants, and plaintiff's motion to file his complaint and prosecute a cause thereunder in forma pauperis should be denied.

The Clerk shall furnish a conformed copy of this narrative order to the petitioner at his Salem, Oregon, address and two conformed copies to the Attorney General of the State of Oregon at his Salem, Oregon, address, via regular United States mail.

So ordered.