Argued July 7, affirmed November 17, 1965, petition for
rehearing denied January 11, 1966

# McWILLIAMS *v.* GLADDEN

407 P. 2d 833

*Lawrence A. Aschenbrenner,* Public Defender, Salem, argued the cause and filed a brief for appellant.

*Peter S. Herman,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL,* GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, J.

On June 25, 1958, Evan McWilliams entered a plea of guilty to murder in the second degree and was sentenced to life imprisonment in the Oregon State Penitentiary. On June 12, 1964, he commenced in the circuit court of Marion county proceedings under ORS 138.510–138.680, alleging that his imprisonment was illegal in that:

"A. That petitioner was denied his right to counsel under the Sixth and Fourteenth Amendments of the Constitution of the United States,

---

* O'Connell, J., did not participate in this decision.

and Article I, Section 11 of the Constitution of the State of Oregon, in that petitioner did not voluntarily and understandingly waive his right to counsel.

"B. That petitioner was denied due process of law under the Fourteenth Amendment of the Constitution of the United States, in that he did not voluntarily and understandingly enter a plea of guilty to the charge for which he is imprisoned."

The defendant denied the allegations of the petition and a trial of the issues was had.

The circuit court of Marion County found that under the facts the constitutional rights of the petitioner had not been invaded. From the judgment of the trial court denying the petitioner relief, petitioner has appealed.

The record discloses that petitioner was arrested on the 21st day of June, 1958; that on June 23rd he was arraigned in the district court of Klamath county and bound over to await the grand jury of that county. On June 25th he appeared in person and without counsel in the circuit court of Klamath county where it was stated to the court that he desired to waive indictment by the grand jury. At this time the trial court records disclose the following proceedings were had:

"THE COURT: Your name is Evan M. McWilliams?

"THE DEFENDANT: Yes, sir.

"THE COURT: Let the record show the defendant appears in court in person. Do you have a lawyer to represent you in this case?

"THE DEFENDANT: No, sir.

"THE COURT: Do you have any money or

property with which to hire the services of a lawyer?

"THE DEFENDANT: No, sir.

"THE COURT: It is indicated here that you are to be charged with Murder in the Second Degree, and it is the duty of the Court to appoint a lawyer to represent you should you so request.

"THE DEFENDANT: No, I don't care for a lawyer.

"THE COURT: The matter of the appointment of a lawyer is a right you have that only you can waive. You understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you refuse the appointment of a lawyer by the Court?

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you been promised any reward or immunity for waiving that right?

"THE DEFENDANT: No, sir, I haven't.

"THE COURT: Have you been threatened or coerced into waiving that right?

"THE DEFENDANT: No, sir.

"THE COURT: The matter of waiving a lawyer is your free and voluntary act?

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you been influenced to waive this right?

"THE DEFENDANT: No, sir.

"THE COURT: By any person? Any person whomsoever?

"THE DEFENDANT: No, sir, I haven't.

"THE COURT: It is also indicated here that you desire to waive indictment by a grand jury of this county; is that right?

"THE DEFENDANT: Yes, sir.

"THE COURT: You understand the purpose of the grand jury, a grand jury in this county or any other county in this state, do you not?

"THE DEFENDANT: Yes, I do.

"THE COURT: So there is no question, the purpose of a grand jury is to investigate any and all crimes happening within the particular county. Now, you have a right to have your case examined and investigated by a grand jury of this county; do you understand that?

"THE DEFENDANT: Yes, sir, I do.

"THE COURT: That is a right that you have that only you can waive. Do you understand?

"THE DEFENDANT: Yes, sir.

"THE COURT: And it is your desire to waive that right you say?

"THE DEFENDANT: Yes, sir, it is.

"THE COURT: Have you been promised any reward or immunity for waiving that right?

"THE DEFENDANT: No, I haven't.

"THE COURT: Have you been threatened or coerced into waiving that right?

"THE DEFENDANT: No, sir, I haven't, sir.

"THE COURT: Has anyone influenced you in any way in waiving that right?

"THE DEFENDANT: No, sir.

"THE COURT: The waiving of that right has been your free and voluntary act; is that right?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now again, your refusing an attorney, the appointment of an attorney by the Court is your free and voluntary act?

"THE DEFENDANT: Yes, sir.

"THE COURT: And your waiving investigation of your case by a grand jury of this county is also your free and voluntary act?

"THE DEFENDANT: Yes, sir, it is.

"THE COURT: Uninfluenced by any person or persons?

"THE DEFENDANT: Yes, sir.

"THE COURT: Upon your reading and signing this waiver of indictment and consent to the filing of an information the Court will make an order.

"MR. BEDDOE: Read that (handing waiver to the defendant). (Defendant reads waiver.)

"MR. BEDDOE: Just sign that right here at the bottom. (Defendant signs waiver.)

"THE COURT: You have signed this waiver of indictment and consent to the filing of an information?

"THE DEFENDANT: Yes, sir.

"THE COURT: The Court orders the district attorney to file an information charging the defendant Evan M. McWilliams with the crime of murder in the second degree.

(District attorney files information with the Clerk.)

"THE COURT: Go ahead with the arraignment.

"(District attorney reads Information of District Attorney on Waiver of Indictment.)

"MR. BEDDOE: Mr. McWilliams, I hand you a certified copy of the information (handing same to the defendant).

"THE COURT: Is your true name Evan M. McWilliams?

"THE DEFENDANT: Yes, sir.

"THE COURT: How old are you ?

"THE DEFENDANT: Forty-seven.

"THE COURT: And you are the defendant in this proceeding?

"THE DEFENDANT: Yes, sir.

"THE COURT: You have heard the reading of the information by the district attorney charging you with the crime of murder in the second degree?

"THE DEFENDANT: Yes, sir, I have.

"THE COURT: Are you ready at this time to enter a plea to that charge?

"THE DEFENDANT: Yes, sir.

"THE COURT: What is your plea, Guilty or Not Guilty?

"THE DEFENDANT: I plead Guilty.

"THE COURT: A plea of Guilty is received. The Court will set June 30, 1958 at the hour of 10:00 o'clock for the passing of sentence.

"THE DEFENDANT: Your Honor, if I may I would like to have my sentence now. I would like to waive that and have my sentence now.

"THE COURT: The law requires that the Court wait forty-eight hours before passing sentence unless it is waived by the defendant. The reason for that rule, it creates a cooling period. It would be hard to understand a cooling period in this type of case because the cooling period would be upon the part of the Judge. That is what it is meant for, the one who passes the sentence. And in this case there is but one sentence that I can give. I cannot give you one day more or one day less than life in prison. Now, you are asking the Court to pass sentence at this time; is that right?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now again, it is your desire?

"THE DEFENDANT: It is my desire.

"THE COURT: It is your free and voluntary act?

"THE DEFENDANT: Yes, it is.

"THE COURT: In asking for this sentence at this time?

"THE DEFENDANT: Yes, sir.

"THE COURT: You have not been coerced into asking for this time?

"THE DEFENDANT: No, sir.

"THE COURT: You have not been threatened?

"THE DEFENDANT: No, sir.

"THE COURT: And you have not been promised anything?

"THE DEFENDANT: No, sir, I haven't.

"THE COURT: Have you any reason to give this Court why sentence should not be passed upon you?

"THE DEFENDANT: Pardon?

"THE COURT: Have you any reason to give this Court why sentence should not be passed upon you at this time?

"THE DEFENDANT: No, sir.

"THE COURT: It is the judgment and order of the Court that you spend the rest of your natural life in the Oregon State Penitentiary. You are remanded to the Sheriff."

The petitioner does not claim that the record of the above proceedings is not accurate, but contends he did not "voluntarily" and "understandingly" waive counsel and enter a plea of guilty.

As a factual basis for his contention, petitioner testified that he is a caucasian and was 47 years of age at the time of his conviction; that he had an eighth grade education; that he had never been arrested be-

fore for a crime; that he had served in World War II and been honorably discharged as a staff sergeant; that he had been steadily employed as a logger for a number of years; that in 1941 he married an Indian girl, Patricia Schockin, but they were separated prior to his arrest because "she got to running around too much * * * with different ones. The last one was Charlie Robinson," (who was killed by the petitioner).

The petitioner also testified as to his version of what occurred at the time he killed Robinson, stating that he had been drinking at the time and only his wife was present. He further stated that after he had notified a deputy sheriff he had killed Robinson he was taken to the county jail. This was on a Saturday and on Monday morning the petitioner states that he was taken to the office of the district attorney, Mr. Beddoe, where the district attorney told him that he had a good first degree murder charge against him, but that if he wanted to plead guilty to second degree murder he would reduce the charge. Petitioner also testified he was told by the district attorney the following:

"'There is a new law passed.' He told me I would get a life sentence for pleading to second degree but he says there is a new law just passed. He said, 'Now I don't promise you you will be paroled within six months,' but he said, 'You probably won't do over two years at the most.'
"* * * * *

"He said he should know that that was the law because he had been on the parole board for two years."

Petitioner further testified that he did not see an attorney while he was in jail, and that before he was

taken before the circuit judge on the 25th the district attorney came to his cell and said:

> "\* \* \* 'When we go to this little court,' he says, 'You waive that,' he says, 'That don't amount to anything.' Then he says, 'When we go to the Circuit Court,' he said, 'The judge will ask you certain questions and you tell him, no for this and that. He will ask you if you want an attorney and you tell him no.' I don't remember all just what he told me the judge would ask me, but he told me the answers to tell him, and he said, 'If you don't tell him that,' he said, 'everything will be lost.'"

Petitioner also stated he did not know at the time he waived counsel and entered his plea of guilty what elements constituted voluntary manslaughter, involuntary manslaughter, justifiable or excusable homicide.

The evidence of the state contradicts the testimony of the petitioner. The district attorney testified that the petitioner requested the sheriff to take him to the district attorney's office for the purpose of asking to be permitted to enter a plea of guilty to the lesser degree of homicide, and that it was at this meeting, while the district attorney was considering the offer, that he told the petitioner he thought he had a good first degree murder charge against him. He also advised petitioner of the elements constituting first and second degree murder. The district attorney stated that he did not agree to the reduced charge at this time, but later, after petitioner had been returned to the jail, did advise him that he would accept his proposition. The district attorney also denied telling petitioner what to do at the proceedings before the cir-

cuit court other than when asked by the petitioner he told him what the procedure would be.

The district attorney further testified that the petitioner asked him about a parole and he told him that he had to be confined for a period of seven years before he would be eligible unless they had changed the rule. He could not remember whether this conversation took place before or after the petitioner was sentenced, but he was positive that the matter was not discussed prior to the petitioner's request to have the charge reduced.

The petitioner in his brief states:

> "If the very definition of waiver is the 'intentional relinquishment or abandonment of a *known* right or privilege,' (emphasis his) *and if the defendant had no idea what an attorney would have advised him, then he did not waive a* (emphasis ours) *known* (emphasis his) right. He waived an *unknown* right which is the same as no waiver at all." (Emphasis his.)

As a basis for this assertion the petitioner points out that he was not advised of the following:

> "1. What elements constituted voluntary manslaughter, involuntary manslaughter, justifiable or excusable homicide.
>
> "2. The law of self-defense or the facts and circumstances requisite to establish that defense.
>
> "3. That intoxication is a defense to the 'premeditation and deliberation' element of first degree murder.
>
> "4. That the only [eye] witness, his wife, could not testify against him without his consent.
>
> "5. That his written statement taken by the District Attorney was inadmissible against him because he was not advised of his right to counsel

and his privilege against self-incrimination prior to making the statement."

It is apparent from the petitioner's statement and the listing of these points that he is under the impression that the standard by which a defendant's waiver must be judged is to be the ability of the prosecution to prove its case.

The test proposed by the petitioner is not one which gives an individual an opportunity to weigh the acts which he knows he either committed or did not commit against his own consciousness of guilt or innocence, but to weigh his chances of avoiding the legal consequences of his acts. We are unable to accept such a test.

■ The purpose behind constitutional requirements of due process are not to protect the guilty from the consequences of their crime, but to prevent a conviction by use of methods which are inconsistent with the American theory of fair play.

■■ We have researched numerous authorities and have reached the conclusion that in considering the question of waiver by a defendant in a criminal case the legal principles which must guide the trial court are as follows: (1) The individual waiving his rights must have the mental capacity to understand fully the nature of the right he is waiving, and (2) his choice must be free of oppressive tactics to induce that choice.

Whether or not these legal requirements are met must depend upon the facts of each individual case.

■ While the trial court in this proceeding did not make a specific finding of fact that this petitioner had the mental capacity at the time he waived counsel and entered his plea of guilty to understand the na-

ture of his act, the record before us fully supports the trial court's general findings in this regard.

The record discloses that the petitioner was of mature age and there is no contention that he suffered mental retardation. It is true he had not received a formal education beyond the eighth grade, but his rise from a private to a sergeant in the army, and his years as a logger clearly indicate that his worldly education did not stop with the eighth grade. The petitioner does not and could not, in view of the record, contend he did not know he had a right to legal representation.

A more difficult problem arises when these principles of an undertanding waiver are applied to the waiver of trial on the merits by the entry of a plea of guilty. Certainly this petitioner knew, and the record discloses he knew, that if he entered a plea of guilty there would be no trial and all that remained was the assessment of the penalty.

The petitioner testified that at the time he entered his plea of guilty he did not "understand the elements" of second degree murder. No attempt was made by the petitioner to state what, if any, "elements" of this crime he knew about or did not know about, and his knowledge or lack of knowledge of these "elements" is left unanswered in the record.

It must be conceded, if petitioner did not understand the elements of the crime of second degree murder, he could not understandingly measure against his inner conscience his acts and his mental attitude to determine his guilt or innocence of crime.

Second degree murder, insofar as is applicable, is defined in ORS 163.020 as follows:

"Any person who kills another purposely and

maliciously  *  *  *  is guilty of murder in the second degree."

We cannot believe that this petitioner as a reasonably intelligent person would not understand the general meaning of the word "purposely" to mean "intentionally" or the word "maliciously" to mean with an "evil intent." This especially in view of the fact that the district attorney testified he had explained the elements of murder in the first degree and murder in the second degree to the petitioner.

Since there is ample evidence to sustain the trial court's ruling of an understanding waiver, there remains only the question of it being voluntary.

This again raises a question of fact. The petitioner wishes to convey by his testimony the thought that he was induced to waive his rights and enter his plea of guilty because of fear created by the district attorney in informing him that he thought he had a good first degree murder case against him; and also the inducement that if he would plead guilty he could be paroled at the end of two years.

■ While the petitioner's testimony might support such an inference, in our opinion, the record as a whole is such that a trier of fact would reasonably reach an opposite conclusion.

The trial court in this proceeding went fully into the merits of the factual claims advanced by the petitioner and its findings are fairly supported by the record as a whole.

The judgment is affirmed.

SLOAN, J., concurring.

Plaintiff's petition alleges facts which, if true, would establish that he was convicted upon a plea

of guilty without advice of counsel in violation of the Sixth Amendment. It seems to me that the essential issue in the case is to decide if the Post Conviction Hearing Act, ORS 138.510 et seq., has afforded the petitioner an adequate forum in which to test his claims. *Case v. Nebraska,* 1965, 381 US 336, 85 S Ct 1486, 14 L Ed2d 422; *Townsend v. Sain,* 1963, 372 US 293, 83 S Ct 745, 9 L Ed2d 770; *Fay v. Noia,* 1963, 372 US 391, 83 S Ct 822, 9 L Ed2d 837, and other cases cited in these decisions require that:

> "The [state] procedure should be swift and simple and easily invoked. It should be sufficiently comprehensive to embrace all federal constitutional claims. In light of Fay v. Noia, supra, it should eschew rigid and technical doctrines of forfeiture, waiver, or default. See Douglas v. Alabama, 380 US 415, 422-423, 13 L Ed2d 934, —, —, 85 S Ct 1074; Henry v. Mississippi, supra. It should provide for full fact hearings to resolve disputed factual issues, and for compilation of a record to enable federal courts to determine the sufficiency of those hearings. Townsend v. Sain, supra. It should provide for decisions supported by opinions, or fact findings and conclusions of law, which disclose the grounds of decision and the resolution of disputed facts. Provision for counsel to represent prisoners, as in § 4 of the Nebraska Act, would enhance the probability of effective presentation and a proper disposition of prisoners' claims." *Case v. Nebraska,* supra, 14 L Ed2d 429.

Although the above is taken from a concurring opinion it fairly summarizes the prior decisions. The Oregon Act satisfies each of those requirements.

In the instant post conviction proceeding petitioner was afforded a full dress hearing, assisted by counsel, with an opportunity to present all of the evidence he desired and a brief in support of his contentions. The

trial court, after considering the case, made specific findings and conclusions. No deficiency in applying the Supreme Court prescribed standards can be found.

It should then be our function to decide if the evidence reasonably supports the trial court's findings. In this instance it does. Particularly, when the prime problem considered by the trial court was to test the truth of the testimony. We should view the findings as the verdict of a jury and if supported, the findings should be affirmed. It is not our function to review the evidence unless it appears that the trial court has misapplied the law in respect to his consideration of the evidence. ORS 138.650. I would affirm the trial court on this basis.

GOODWIN, J., joins in this opinion.

DENECKE, J., dissenting.

The majority and concurring opinions hold that there was evidence to sustain the trial court's finding that the petitioner waived his right to counsel. Both opinions necessarily assume that the defendant in a noncapital case had a right to counsel in 1958. This is a post-conviction case; therefore, only a *constitutional* right to counsel is in issue. I, therefore, construe the opinions as extending *Hamilton v. Alabama,* 368 US 52, 82 S Ct 157, 7 L ed2d 114 (1961), and *White v. Maryland,* 373 US 59, 83 S Ct 1050, 10 L ed2d 193 (1963), to noncapital cases and holding that such an extension is retroactive, at least in a case in which a life sentence is mandatory. The other possible construction of the opinions is that in 1958 the Oregon Constitution guaranteed the right to counsel at arraignment in a case in which life imprisonment was mandatory. Cf. *State v. Delaney,* 221 Or 620, 332

P2d 71, 351 P2d 85 (1960). I would concur in the first alternative.

I dissent from the decision, however, in the belief that there was no evidence from which the post-conviction trial court could find the petitioner waived his right to counsel.

As I read the record, the basic facts from which a waiver must be found are these: the petitioner was clearly told that he had a right to a lawyer and he stated voluntarily that he did not want a lawyer; the district attorney explained the elements of first- and second-degree murder to petitioner; the trial court may have told petitioner before he entered his plea that the mandatory punishment was life. (I will assume this was done.) In my opinion this is not enough to support a finding that the petitioner waived his right to counsel.

In *Von Moltke v. Gillies*, 332 US 708, 68 S Ct 316, 92 L ed 309 (1948), the defendant had some advice from nongovernment lawyers on two occasions. She pleaded not guilty on two occasions. She received some legal advice from the FBI and then asked to plead guilty. Her plea was received although she had no lawyer at that time. She signed a written waiver of counsel. The defendant was a German countess and her husband was a university instructor.

The United States Supreme Court reversed her conviction upon the ground "that the undisputed testimony previously summarized shows that when petitioner pleaded guilty, she did not have that full understanding and comprehension of her legal rights indispensable to a valid waiver of the assistance of counsel." (332 US at 720) The Court stated:

"* * * We have said: 'The constitutional right of an accused to be represented by counsel

invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake —is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understand- of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." (332 US at 723-724)

In *Moore v. Michigan,* 355 US 155, 160-161, 78 S Ct 191, 2 L ed2d 167 (1957), the Court invalidated a conviction under a plea of guilty. It said:

"However, we may also infer from the record that the Michigan courts held that even if petitioner was constitutionally entitled to the assistance of counsel he waived this right when he told the trial judge that 'he didn't want one, didn't have one, he wanted to get it over with.' The constitutional right, of course, does not justify forcing counsel upon an accused who wants none. See *Carter v. Illinois,* 329 US 173, 174 [91 L ed 172, 174, 67 S Ct 216]. But, 'where a person convicted in a state court has not intelligently and under-

standingly waived the benefit of counsel and where the circumstances show that his rights could not have been fairly protected without counsel, the Due Process Clause invalidates his conviction * * *." * * * ."

In *People v. Chesser,* 29 Cal2d 815, 178 P2d 761 (1947), the defendant repeatedly confessed the killing of a baby. Upon arraignment the court told the defendant of his right to have court-appointed counsel and the defendant said he did not want a lawyer or a trial and that he was ready to plead. The court told him there was a possibility of the death sentence and asked his plea, and the defendant pleaded guilty. A hearing was held upon the degree of the offense. The defendant was asked if he wanted to testify or ask witnesses questions and he refused, stating that he would like to be sent to the gas chamber. The court ordered two doctors to examine the defendant and to give their opinions as to his sanity. The defendant told the doctors that he had been drinking and could not remember the killing. The doctors reported defendant sane. The trial court found the defendant sane, that he killed the child with premeditation, and imposed the death sentence. The California Supreme Court reversed, holding that the defendant had not effectively waived his right to counsel. The court said:

"* * * In a capital case where the defendant has not had the benefit of advice of counsel, and there is nothing to indicate that he understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted, *the trial judge does not sufficiently perform his duty if he merely advises the defendant that he has a right to counsel and that the death penalty may be imposed."* (Emphasis added.) 178 P2d at 765

As I understand the above cases, there was no evidence from which the post-conviction court could find this petitioner *knowingly* waived his right to counsel, or, stated differently, no evidence to support a finding that the petitioner *understandingly* entered a plea of guilty.