Argued September 9, affirmed November 30, 1966

# LINDBERG MARC TUCKER *v.* GLADDEN

420 P. 2d 625

*Gary D. Babcock,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*David H. Blunt,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Robert Y. Thornton, Attorney General, and Wayne M. Thompson, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

Petitioner, without being represented by counsel, pleaded guilty to an information charging him with assault and battery while unarmed, by means of force likely to produce great bodily injury. He was sentenced to serve not to exceed five years in the penitentiary, and he thereafter brought this post-conviction proceeding contending he is unlawfully confined by the defendant, who is the warden of the penitentiary.

The basis for relief advanced by petitioner is that he did not voluntarily and understandingly waive counsel and enter a plea of guilty to the charge. After a post-conviction hearing, the trial court ruled contrary to petitioner's contention. The court therefore dismissed the proceeding and petitioner appealed from the order of dismissal. The question presented is whether there was sufficient evidence to justify the trial court's findings.

Petitioner testified that he was an alcoholic and had been drinking several days prior to his arrest and as a result he was confused at the time of his plea; that he was not aware of the various degrees of assault; that he was unaware of the maximum sentence for the different degrees of assault; and that at the time he pleaded guilty he was under the impression that the victim was suffering from a concussion, fractured arm, fractured skull and ruptured spleen, when in fact the victim suffered only a broken nose and bruises.

There was further testimony from which the trial court could find that petitioner was 26 years of age; had completed the 10th grade in school; had twice previously pleaded guilty to felony charges where he had been represented by counsel, and in addition had ap-

peared in court on approximately ten disorderly conduct charges. There was also evidence that petitioner was not inebriated at the time of his commission of the crime; that he was arrested on May 25 immediately after its commission and taken before a magistrate; and that he did not plead guilty until June 3. At the time of his plea he was told by the judge as follows:

> "* * * you have a right to have the advice and help of a lawyer to advise you about what you out [sic] to do under the circumstances, and to defend you in case you want to contest this charge in any way. And if you do not have the money with which to employ counsel and want one, it is my duty to appoint a lawyer to represent you at the county's expense."

Thereafter petitioner refused counsel. The information, which was read to him and of which he received a copy, charged him only with bruising the head, face and body of the victim. Petitioner admitted he was told by the sheriff he would receive a minimum of a year and that he understood that if it were more it had to be served in the penitentiary.

After the plea of guilty and before sentencing, the following transpired:

> "DISTRICT ATTORNEY: Mr. Tucker I will recite the facts of this situation to the Court, if that is satisfactory with you, and then you correct me if any of the facts I state are not right, and I will give you a chance as we go along. Is that satisfactory?
>
> "MR. TUCKER: Yes."

Thereafter the District Attorney told the court that the victim had suffered severe bruises and a broken nose, and in response to a question by the court stated that the maximum sentence for the offense was five

years. Before sentencing, the following then took place:

"THE COURT: Mr. Tucker, I want to hear from you, if there is anything you have to say in regard to this situation.

"MR. TUCKER: No. I don't have."

There was adequate evidence from which the trial court could find that petitioner was sober at the time he committed the crime; that he was arrested shortly after and on the same day he committed it; and that nine days intervened between petitioner's arrest and his plea, and that he was therefore unhampered by drink at the time of his waiver and plea.

Petitioner cannot now legitimately contend that he did not know the extent of the injuries he was charged with having inflicted on the victim. The information set them forth, and prior to the entry of his plea he was given a copy and it was read to him.

Prior to sentence petitioner learned of the maximum sentence that could be imposed, and was given an opportunity by the judge to make any remarks he wished. He did not avail himself of this opportunity to protest that he had not known the possible consequences of his plea. From this it can be inferred that he knew the maximum possibilities involved or that, in any event, they had no effect on his plea.

■ Petitioner claims he did not know of the lesser-included crimes of which a jury could have found him guilty. The important thing was whether he understood the nature of the crime to which he pleaded, and whether he was able to weigh this understanding against his own knowledge of the acts he performed and thus decide whether he was guilty. Whether he

knew of some degree of the crime to which he did not plead or its maximum sentence is irrelevant.

There is nothing technical about the crime with which he was charged. Assault and battery are everyday terms of common usage and understanding by laymen. The technical, legal meaning is not substantially different from common usage. There is nothing technical or obscure about the words "great bodily injury" or "unarmed." The trial court had sufficient basis upon which to find that a person of petitioner's age, understanding and experience could understand, without the aid of counsel, the nature of the comparatively simple crime with which he was charged.

Matters of defense are of much greater technicality, but petitioner did not testify that he did not comprehend all possible defenses.

■ In our opinion there was adequate evidence from which the trial judge could find that petitioner voluntarily and understandingly waived the services of an attorney and entered his plea of guilty. This case comes within the holding in *McWilliams v. Gladden,* 242 Or 333, 407 P2d 833 (1965).

The judgment of the trial court is affirmed.

O'CONNELL, J., specially concurring.

Our recent cases demonstrate that the taking of a plea of guilty in the absence of the advice of counsel is apt to raise serious questions not only with respect to the rights of accused persons but also in relation to the efficient administration of justice in this state.

In the past we have assumed that the trial judge, prior to accepting a plea of guilty, can adequately advise the accused of his rights. This is also the assumption made in *Von Moltke v. Gillies,* 332 US 708, 68 S Ct 316, 92 L Ed 309 (1948). One might well put the

question posed in *Powell v. Alabama,* 287 US 45, 61, 53 S Ct 55, 77 L Ed 158, 84 ALR 527 (1932) where the court said, "But how can a judge, whose functions are purely judicial, effectively discharge the obligations of counsel for the accused?" When a defendant is called upon to decide whether or not he will plead guilty there are many factors which might well influence his decision. Even the most conscientious trial judge is not likely to disclose all these factors to the accused. In fact, it is doubtful whether it would be proper for the trial judge to inform the accused of some matters which counsel would regard as significant. Thus, it would not be proper for the court to advise the accused of his chances of bargaining with the district attorney for a lesser charge if a plea of guilty were entered.[1] Nor would it seem proper for the court to explain the odds favoring the accused if the case were tried before a jury. This might well affect a defendant's choice where juries have commonly treated defendants sympathetically, as, for example, where he is charged with negligent homicide, or where he has caused death through euthanasia or in other similar classes of cases.

Even when the trial judge is free to advise there is a question of deciding what must be explained to the accused. As Beany on Right to Counsel puts it, "Must the judge give a short course in constitutional law and judicial procedure, or should he appoint counsel

[1] See Barber v. Gladden, 220 F Supp 308, 314 (D Or 1963); Anderson v. North Carolina, 221 F Supp 930, 934-35 (W D N C 1963); Note, Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 112 U Pa L Rev 865, 888-89 (1964); Comment, Waiver of the Right to Counsel in State Court Cases: The Effect of Gideon v. Wainwright, 31 U Chi L Rev 591, 601 (1964); Note, The Representation of Indigent Criminal Defendants in the Federal District Courts, 76 Harv L Rev 579, 585 (1963).

to advise the defendant of his rights." (p. 63.) Some of the trial judges in Oregon apparently do give a "short course in constitutional law."[2]

---

[2] This seems to be the practice of some of the judges in Multnomah county who use the following check list:

"1. Read the charge to the defendant and ask him if he understands the charge against him.

"2. Ask defendant if he realizes his plea of guilty waives his right to trial by the court or by a jury, and make him expressly waive the right on the record.

"3. Advise the defendant that he is entitled to a lawyer and if indigent, a free lawyer will be provided throughout any criminal proceedings against him.

"4. Advise the accused he has a right to call witnesses in his own behalf at no expense and that the witnesses will be compelled to attend trial (specify limitation of numbers).

"5. Advise the defendant that he has an absolute right to confront any witness that will testify against him and to cross-examine that witness.

"6. Tell the defendant that he is presumed to be innocent, and that he doesn't have to prove anything.

"7. Advise the accused that the sole burden of proof is upon the prosecution to establish his guilt beyond a reasonable doubt and to a moral certainty.

"8. Advise the accused that he does not have to take the stand or give testimony against himself.

"9. Advise the accused of the material elements of the particular crime and advise him that the prosecution must prove every material element before he could be found guilty.

"10. Advise the accused that his prior criminal record cannot be used against him unless he takes the stand, and then only for impeachment and not to prove his guilt. Tell him that if he does take the stand his prior criminal record is admissible.

"11. Ask the accused if he has explored the possibility of any defenses such as self-defense, insanity, lesser offenses, and so on.

"12. Advise the accused of the maximum penalty of the crime involved.

"13. Ask the accused if he has been given any promises by anyone that he will receive special treatment if he pleads guilty.

"14. Tell the accused that he is entitled to no lighter sentence by pleading guilty and ask him if he is making the plea on the assumption that he will receive any special treatment.

In addition to the advantage to the accused of having counsel in deciding whether to enter a plea of guilty, there is the advantage of having counsel after the plea of guilty has been made and the court is performing its sentencing function. Counsel at the sentencing stage can be of inestimable value to the defendant.[9]

"15. Advise the accused that any confession or statement or admission he has made may well be inadmissible unless certain constitutional safeguards have been met.

"16. Advise the accused that no evidence obtained in a search and seizure can be introduced in his case unless certain constitutional safeguards have been met.

"17. Advise the accused that this is his plea, that he must enter it, and that his lawyer cannot enter it for him and that it must be free and voluntary act on his behalf.

"18. Have the accused state the condition of his health and if he is suffering from any disorder of any nature.

"19. Inquire of the accused if he has taken any pills or had anything to drink or has taken any drugs or anything else that would in any way impair his judgment.

"20. Ascertain if the accused has ever been in a mental institution or suffered from mental disorders and if he is therefore fully alert and knowingly entering his plea.

"21. Ask the accused if he is in fact guilty of the crime as read to him by the court or prosecutor.

"22. Finally, and most important, make the accused tell you in his own words on the record exactly what he did.

"23. Take the plea!"

See also, Sloan, The Jail House Lawyer versus Court and Counsel: Some Ideas for Self-Protection, 1 Washburn L Rev 517, 524-26 (1962).

[9] The importance of counsel at the sentencing stage is well explained in Kadish, The Advocate and the Expert—Counsel in the Peno-Correctional Process, 45 Minn L Rev 803, 829-30 (1961). See also Martin v. United States, 182 F2d 225, 227 (5th Cir 1950); Krash, The Right to a Lawyer: The Implication of Gideon v. Wainwright, 39 Notre Dame Law 151, 156-57 (1964); Pharr, On Sentencing: What a Judge Expects from Defense Counsel, 1 Prac Law 76 (Oct 1955); Note, The Representation of Indigent Criminal Defendants in the Federal District Courts, 76 Harv L Rev 579, 585 (1963); Note, Right to Counsel at the Time of Sentence: New York's Forgotten Guarantee, 27 Brooklyn L Rev 110, 121-23 (1960).

Yet in spite of these advantages to the accused of having the assistance of counsel at various stages in the proceedings, it does not appear that counsel is so essential in every case that it cannot be waived. We are faced, then, with the necessity of deciding upon a case by case basis whether the defendant was adequately advised by the trial judge. This is a very unsatisfactory method of dealing with the problem. In the first place, this court is not in full agreement as to the standard which the trial courts must meet in advising the accused.[9] It is apparent that the standards employed by the trial judges in Oregon also vary from court to court. Moreover, in many cases it is impossible to determine from the record precisely what advice was given and whether the accused was capable of understanding the advice which he received. In appraising this problem, we cannot disregard the many cases where a plea of guilty is taken without the advice of counsel and there is no appeal from the judgment. It is not unlikely that in some of them the court's instruction and advice was not sufficient to meet the minimum constitutional standard.

Fairness to the accused is not the only consideration in determining whether waiver of counsel should be accepted. Failure to appoint counsel provides an opening for defendants to make post-conviction attacks on judgments of conviction on the ground that the consequence of waiving counsel was not adequately explained to them or that they did not have the intelligence to understand the court's explanation. Thus, the failure to appoint counsel is almost certain to increase

[9] McWilliams v. Gladden, 242 Or 333, 407 P2d 833 (1965); Lasley v. Gladden, 244 Or 349, 418 P2d 256 (1966); Moore v. Gladden, 244 Or 352, 418 P2d 256 (1966).

an already heavy docket of post-conviction cases, both in the trial courts and on appeal.[5]

It is the practice of some trial judges in this state and elsewhere[6] to appoint counsel in spite of the defendant's willingness to waive it. If all trial judges would adopt this practice, most of the problems discussed above would never arise.

.  DENECKE, J., specially concurring.

I concur in the belief that the trial court in this case afforded the accused the protection which in my opinion was not afforded the accused in *McWilliams v. Gladden*, 242 Or 333, 407 P2d 833 (1966).

---

[5] The experience in applying the rule in Betts v. Brady, 316 US 455, 62 S Ct 1252, 86 L Ed 1595 (1942) lends support to this prediction.  See Israel, Gideon v. Wainwright: The 'Art' of Overruling, 1963 Sup Ct Rev 211, 261 et seq.  See also Sloan, *supra* note 2.

.    [6] "Judges in some areas are extremely reluctant to permit a defendant to waive the right to counsel; in New York City, Los Angeles, San Francisco, and Pittsburgh, for example, counsel is appointed in virtually every case."  Note, The Representation of Indigent Criminal Defendants in the Federal District Courts, 76 Harv L Rev 579, 584 (1963).