Argued July 6, affirmed December 30, 1966

# ORTEGA *v.* WILLIARD

421 P. 2d 966

*John Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*David H. Blunt,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

McALLISTER, C. J.

On July 9, 1964, the petitioner, Haven Ortega, together with his brother, Donald, and a third young man named Lawson, broke into a locked compartment of a small boat located on the banks of the Rogue river near Canfield Riffle in Curry county, with intent to steal therefrom. On the following day, July 10, the three young men were arrested and taken before the district judge for Curry county. After being advised of their rights by the district judge, the three young men waived their right to a preliminary hearing and were bound over to the grand jury.

On the following Monday, July 13, 1964, the three men were arraigned in the circuit court for Curry county before the Honorable Robert C. Belloni, where all three men waived their right to counsel, waived indictment by a grand jury, and pleaded guilty to a district attorney's information charging them with breaking and entering a structure other than a dwelling. ORS 164.240. Lawson was given a suspended sentence, and the sentencing of the two Ortegas was continued

pending receipt of a pre-sentence investigation. On August 24, 1964 both Ortegas were sentenced to terms of three years in the Oregon State Correctional Institution.

Haven Ortega has brought this post-conviction proceeding contending that he did not voluntarily and knowingly waive his right to counsel and enter his plea of guilty. After a hearing the court below made detailed findings that Ortega voluntarily and knowingly waived his right to counsel and entered his plea of guilty. The court dismissed the petition, and petitioner appeals.

Ortega's arraignment before Judge Belloni was reported, and in the transcript thereof the following appears:

"MR. MILLER [District Attorney]: This is the matter, Your Honor, of State of Oregon versus Haven Ortega.

"Your Honor, Mr. Ortega was bound over to the grand jury on the charge of breaking and entering a structure other than a dwelling.

"A proceeding in the District Court of Curry County and—he is not represented by counsel.

"I don't know what his wishes are in that regard but I am informed by the Sheriff's office that he wishes to appear here today and waive indictment by the grand jury.

"THE COURT: Your name is Donald Ortega?

"A No, Haven Ortega.

"MR. MILLER (Interposing) There are two files there, Your Honor. Donald Ortega will follow this one.

"THE COURT: All right. This matter will proceed under that name whether or not it is your correct name but you assure me that it is?

"A Yes.

"Q You are not represented by an attorney?
"A No.
"Q Do you wish to be?
"A No.
"Q If you are unable to pay for an attorney because of lack of funds the Court is willing to appoint an attorney for you at county expense.
"Do you want one on that basis?
"A No, sir.
"Q All right, you have the right to have this matter heard by the grand jury or you may waive that, that means give up that right and come before the Court directly at this time.
"Which would you rather do?
"A Come before the Court at this time.
"Q Have there been any threats made to you to require you to give up this right?
"A No, there hasn't.

"Q Have there been any promises of leniency made to you?
"A No.

"Q All right, then, you may read and sign the document which the Clerk has for you and you will be thereby giving up your right to the grand jury.
(At this time the witness read and signed the waiver presented to him by the Clerk of the Court.)

"THE COURT: You may proceed under the Information of the District Attorney."

The information was then read verbatim by the District Attorney, the pertinent portion of which read as follows:

"That said Haven Ortega on the 9th day of July, A. D. 1964 in the said County of Curry and State of Oregon, then and there being, did then and there, wilfully and feloniously and unlawfully break and enter a certain boat, to-wit: a 14 foot wooden boat bearing Oregon License #OR 101

DUC, located on the North Bank of the Rogue River, near Canfield Riffle; the said boat then and there being a boat in which there was at the time, personal property kept, with the intent of him, the said Defendant, to steal therefrom and commit larceny therein, by forcibly breaking into a locked compartment of said boat, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

"THE COURT: You have the privilege of waiting a full day before entering your plea to this charge or you may waive that time and enter your plea now.

"Which would you rather do?

"A  I will waive my time and enter my plea now.

"Q  What is your plea?

"A  Guilty.

"Q  A guilty plea will be received.

"You may have two full days before the Court passes sentence or you may waive that time and the Court will pass sentence now.

"Which would you prefer?

"A  I would like to waive that time and—may I have a chance to say something?

"THE COURT: Yes, you may. First, Mr. Miller.

"MR. MILLER: Your Honor, might I suggest that if we could have this matter wait we have two others involved in the same situation.

"THE COURT: All right. You take a seat back there."

The advice given Ortega by the trial judge was minimal and if the record contained nothing more, the proceedings would probably not meet the standards set by *McWilliams v. Gladden,* 242 Or 333, 407 P2d 833 (1966), and *Tucker v. Gladden,* 245 Or 109, 420 P2d 625 (1966). However, the record contains much more, bearing on Ortega's knowledge of his rights

and of the charge against him, and the consequences of his plea of guilty. Since each of these cases must be decided upon its own facts, we will set out the other pertinent portions of the record.

First, it appears that immediately after Ortega was arraigned, his brother Donald was arraigned and advised of his rights in substantially the same language and with the same result. Thereafter another case was heard, presumably Lawson's. It thus appears that Ortega heard the advice of the court repeated three times, once to himself and twice to his companions. That Ortega understood what was going on and was not afraid to assert himself is illustrated by the following that occurred after the three men were arraigned and the court started to consider the imposition of sentence:

"THE COURT:  *  *  *

"Mr. District Attorney, do you have something to say about these young men?

"MR. MILLER: Yes, Your Honor. First, I would like to point out their ages, the two Ortegas, Haven is eighteen and Donald Ortega his brother is twenty-five.

"To my knowledge, neither of them are married or have a family.

"As far as Haven Ortega is concerned, this eighteen year old boy comes from California with his brother.

"Haven Ortega has been before the Court before, in—on a felonious check in 1963 and in California—

"HAVEN ORTEGA: (Interposing) Excuse me, Your Honor, but that wasn't me.

"MR. MILLER: What?

"DONALD ORTEGA: (Interposing) I am Donald Ortega.

"MR. MILLER: Excuse me, this is Donald Ortega."

Ortega's brief devotes much space to arguing that he did not understand the nature of the charge against him. In that connection the transcript discloses the following:

"[MR. MILLER] Now, as far as this situation, Your Honor, this involved a bit of activity on these three individuals parts that had the Sheriff's office somewhat amazed.

"In addition to breaking into this boat they tried to shoot the lock off this compartment and finally pried the thing open and took all they got out of the compartment, itself which was a fish club, that was the only thing that was in it at the time.

"The boat, other than that was empty. In addition to this, the three of them found a Jeep here belonging to a Mr. Glenn Carpenter and smashed the side of the Jeep with an axe. There was [sic] a jack through the windshield of the Jeep, then, tried to hot-wire the Jeep and finally ended up by pushing the Jeep over the bank and down to the water's edge.

"In addition to that, traveling in an automobile with a pistol in the car, they fired a shot through the windshield of another car parked up near the Lobster Creek Bridge.

"All they have—all of these incidents took place on the same day and involved the three individuals."

In view of the above we are not impressed with the argument that Ortega did not understand the charge against him. Any 18-year old knows what it is to break into the locked compartment of a boat. As we said in *Tucker v. Gladden,* supra, there is nothing technical about the crime involved here. We are satisfied that Ortega fully understood the nature of the charge against him.

We are further satisfied that Ortega in entering a plea of guilty was motivated by a conscious sense

of guilt. When Ortega was asked whether he had anything to say, he responded as follows:

"THE COURT: Haven Ortega, would you like to say anything?

"HAVEN ORTEGA: No, no more than my brother said that we would make restitution and pay for the damages, fix the car and the other stuff all back up as good as new again."

At the hearing of the post-conviction proceeding Haven Ortega said:

"A Just about the boat. I know we did wrong about that."

and again concerning a visit by his father while Ortega was in jail awaiting sentence:

"THE COURT: Did your parents visit you in Jail?

"A Just my dad. They didn't allow my mother to come in the jail.

"THE COURT: Did you tell him the whole story?

"A He didn't know what happened.

"THE COURT: Did you tell him?

"A Yes. He didn't know what to think about it. He was shocked I guess."

With regard to the possible punishment, Ortega was also advised during his first appearance before Judge Belloni that probation was doubtful. The court said:

"THE COURT: In the case of Alvin Lawson, the Court will suspend passing sentence for a period of two years during which time you will be on probation under the supervision of the Oregon State Board of Parole and Probation.

"In the case of Donald Ortega and Haven Ortega, I feel I have insufficient information on which

to pass sentence at this time and will order a presentence investigation to see whether or not I can find something in that document to warrant probation for these boys.

"You understand this is not a promise to you, I promise only to look and see if I can find something there that may be favorable to you.

"That is all."

The defendant and his brother were then confined to jail for about six weeks, after which they were again brought before Judge Belloni. The judge then asked Ortega if he had anything further to say. In responding Ortega raised no question about his guilt, or his earlier plea of guilty. He spoke rather about avoiding any punishment for his transgressions by enlisting in the army. He said:

"THE COURT: Would you like to say anything further for yourself?

"HAVEN ORTEGA: Yes, I would. When I was up in Coquille, in the county jail I tried to contact the army recruiter.

"I talked to him on the phone and he said he would come up and see me but he didn't.

"I was going to try to get into the army but he went on vacation and just came back today and I didn't get a chance to see him.

"But, that is about all I have to say.

"I was going to go into the service, he was going to be here to represent—if I could have seen him."

At the same hearing, in Ortega's presence his brother made the following statement:

"THE COURT: Would you like to say anything that you haven't heretofore said?

"DONALD ORTEGA: Well, just that I am sorry for what I did and I would like to make restitution on it.

"I got a couple of jobs that I could go and see about today if I did get out on probation, if you seen fit for me to get out.

"I believe I learned my lesson by sitting the time out in the Coquille jail as long as I did and I believe probation would do me more good than being sentenced to go to an institution and that is about all."

With regard to his previous record, Ortega testified at the post-conviction hearing as follows:

"Q  Tell the court about your previous record.

"A  They just found me a juvenile for the juvenile court and they put me there when I am thirteen. I turned fourteen in the county jail and they sent me to Atascadero① and turned me over to the California Youth Authority for two and a half years.

"Q  When were you released?

"A  May 18, 1964.

"Q  Was that on parole?

"A  Yes.

"Q  Then you left California and came to Oregon?

"A  Yes.

"Q  When you got involved in this incident?

"A  Yes, sir."

According to petitioner's brief he was on parole from the Preston School of Industry when he came to Oregon.

■■  We think there was substantial evidence to sustain the findings of the trial court. When the record is taken as a whole it discloses that Ortega voluntarily

---

① Atascadero State Hospital, San Luis Obispo County, California.

and knowingly waived the advice of counsel and entered a plea of guilty.

The judgment of the court below is affirmed.

O'CONNELL, J., dissenting.

The information imparted to the accused does not satisfy the requirements laid down in *Von Moltke v. Gillies,* 332 US 708, 68 S Ct 316, 92 L Ed 309 (1948). I regard the requirements set forth in that case as binding upon the states.

As I indicated in my concurring opinion in *Tucker v. Gladden,* 245 Or 109, 420 P2d 625 at 627 (1966), we could avoid the litigation in this type of case if the trial judge would appoint counsel in every case. I am hopeful that eventually this will become the universal practice in this state.

DENECKE, J., joins in this dissent.